RYAN AND ANOTHER v. JACKSON AND OTHERS.

A plea to the jurisdiction of the Court in an action of trespass to try title, on the ground that the land lies without the limits of the county, comes too late after a plea to the merits.

It seems, that under the statute,(Hart. Dig. Art. 667,) "where the recovery of land, or damages thereto, is the object of a suit," it may be brought in any county where part of the land lies, although the adverse party claims only a part of the land, which lies wholly in another county; and it is therefore not sufficent to allege in a plea of abatement, that so much of the land as is claimed by the defendant, lies in another county, but the plea must negative the fact that any part of the land, sued for, lies in the county where suit is brought.

A party, objecting to written evidence, for any cause not going to its relevancy or competency, but only for the manner of its authentication or proof, must specially assign the grounds of his objection, at the trial, and cause them to ap-

pear upon the record. Objections which go to the competency of evidence, and which need not be specially taken below, appear to be objections which show, not merely that the evidence is not the best evidence, but that it is not admissible under any circumstances.

It seems that purchasers, under the 24th Article of the law of 1825, could alienate, subject to the performance of the condition of cultivation by the grantee, as soon as the concession was made, before the land was selected, or the title issued. (But this was the usual case of a power of attorney.)

The condition of payment of the purchase money in purchases under the 24th Article of the law of 1825, where the terms of Art. 22, as to credit, were granted, was a condition subsequent, the failure to perform which cannot be set up by one claiming by patent issued under the Republic.

It does not appear by any evidence in the record, nor by any law to which we have been referred, that the municipality of Liberty was comprised within the same boundaries as the county of Liberty ; or that the land in question was not within the limits of that municipaltity. (The land lay principally in Trinity county, and partly in Polk, the original survey having been commenced in what is now Trinity.)

Where a patent to James McKim (the defendant) assignee of Polly Ryan, together with a certified copy of the original certificate and field notes on file in the General Land Office, all for one league and labor, were offered in evidence, ( the latter to prove color of title before the patent,) and the Court rejected the certified copy of the certificate and field notes, but admitted the patent, the Court said the certificate and survey were rightly rejected, for the reason that the certificate was not accompanied by evidence of its having been recommended as genuine ; that it did not appear that the patent was issued upon this certificate, and there was no evidence of its genuinenesss ; but that if the evidence had been admitted, there was not such possession as was necessary to make good the defence of limitation, because the defendant who claimed title, had failed to prove that his co-defendant, who was the only person in possession a sufficient time to complete the statutory bar, held the possession under him or in his right. (The proof was that the defendant "got James Ryan to go there," that Ryan died soon after, and that his widow Kitty Ryan, the co-defendant, had been living there ever since.)

It is not legitimate to request the Court to give certain Articles or Sections of the law, in charge to the jury.

Appeal from Polk.   The statement of facts did not contain either of the documents referred to in the bill of exceptions, but read as follows :   " The plaintiffs in this case introduced " the patent to A. Martinez De la Garza, also the power of at-" torney from De la Garza."   And so it continued as to all the documentary evidence.   There was copied into the transcript what purported to be a copy, in Spanish, from the records at Nacogdaches, of a title such as that under which the plaintiff claimed.   It was certified as follows :

" I certify that the foregoing is a legal copy of the original
" documents which, at the request of the party interested, I
" have ordered to be placed in the archives of this office under
" my charge; and that it is faithfully copied and corrected.
" Nacogdoches, August 6th, 1835.   Enriquo Rueg." In con-
nection with the foregoing was a translation certified as fol-
lows:   "I certify that the foregoing pages, numbered one to
" twelve, are correct translations of the documents in the
" Spanish language, hereto annexed.   Thomas G. Western,
" translator, General Land Office."   Dated General Land
Office, Austin, January 27th, 1840.   Then followed the certi-
ficate of the Commissioner of the General Land Office, that
Western, " whose signature appears above, is Translator to
" this office, duly appointed according to law."   They did not
purport to be transcripts from the General Land Office; nor
to have been given in evidence; as they not only were nor
embraced in the statement of facts or bill of exceptions, but
did not even answer the description contained in the bill of
exceptions, to wit:   "a certified transcript from the Land
Office, of a Spanish title to De la Garza, &c."

The concession to De la Garza was not descriptive, but the
lands were to be selected wherever it might suit him.   Blan-
chet selected the lands and obtained the title, in 1834.   The
purchase money was not paid within the time required by the
law.   It was proved, however, that it was paid to G. W.
Miles, Receiver, in 1842, in Texas promissory notes.   The
league of land, claimed by the title to De la Garza, lay prin-
cipally in Trinity county, and partly in Polk, the original
survey having been commenced in what is now Trinity.

The certificate and survey, offered in evidence by the de-
fendants, and rejected by the Court, were certified by the
Commissioner of the General Land Office, to be correct copies
of the originals on file in his office; were in favor of James
McKim, assignee of Polly Ryan, and were for a league and
labor.   The patent, which was admitted, was also to James
McKim, assignee of Polly Ryan, and was for a league and

49

labor. The other facts of the case will be found in the first part of the opinion.

*Yoakum & Branch*, for appellants. I. The plaintiffs had no right to bring a suit in Liberty county, to try the title to lands lying in Houston county. The suit should be brought in the county where the land lies. Under the general issue, the defendants should be allowed to prove this fact. John R. Johnson, the witness and Surveyor proved it. The defendants pleaded specially that their league lies entirely out of Liberty county, and in Houston county, and disclaimed all title to any of the land lying in old Liberty county, as set out in plaintiffs petition.

II. The deed from Blanchet to Hugh Jackson excepts twenty acres of the league. The same exception is in the deeds from Hugh to John and James Jackson. So plaintiffs show no title whatever in the twenty acres excepted; yet they have judgment for the whole league.

III. The Spanish documents, presented in evidence as a muniment of title from the government in this case, are *sui generis*. The first paper presented purports to be a power of attorney from De la Garza to Blanchet, dated 18th March, 1833. The next paper dated the 11th February, 1834, is a petition from Blanchet to Woods, the Alcalde of Liberty, averring the sale of land from the government to Garza, designating the same and asking a survey. The next is the order made by Woods admitting the application and directing Hardin to survey the land. The next is the survey without any date. The next is the petition of De la Garza, dated 31st August, 1830, to the Governor of Coahuila and Texas, asking for the grant of five leagues. The order then follows, dated October 19th, 1830. Then follows the decree of Alcalde Woods, conveying the land, dated 5th July, 1834. Then follows the certificate of Henry Rueg, dated 6th August, 1835, directed to the Political Chief of the department of Nacogdoches, certifying the Spanish documents aforesaid to be a legal copy of the original,.

which at the request of the party interested he (Rueg) had ordered to be placed in the archives of that department then under his charge.   A translation of these documents then follows certified from the Land Office in 1840.

Now, is this Spanish document a paper which the law permits to be read as a title?   It is not a testimonio, or protocol, such as is given to the grantee, under our laws, as a muniment of title.   It is not a certified copy, from the General Land Office, (Hart. Dig. Art. 744,) of the original.   The testimonio, with the certificate which makes it such, is signed by the Commissioner, not by Rueg.   The latter informs us he has charge of the office of the department of Nacogdoches.   How did he get possession of the original?   Its proper place was in the Alcalde's office, until it was ordered to be placed in the General Land Office.   Where is the original?   It does not appear from the papers to be in existence.   Nothing but Rueg's copy is in the Land Office.   On the 10th October, 1848, Mr. Abbott, counsel for plaintiffs, made an affidavit (p. 34) continuing the cause for want of a translated copy from Austin of the Spanish title, stating that he could not get one that would be evidence from any other source.   Yet that translated copy from Austin never appeared; the Judge permitting them on trial to read Rueg's copy, and the translation of Rueg's copy made in 1840.   We know of no law permitting Rueg's copy to be filed in the Land Office, still less of a law allowing a translation of it to be read in evidence.

IV.   The reading of the power of attorney is objected to on like grounds.   It is not a muniment of itself.   It is not in accordance with law.   If intended as a sale, the land had not been granted, and was not for nearly three years afterwards. If Blanchet was using the name of this Mexican to effect a sale to himself, it was a fraud upon the law.

V.   The receipt of Miles should have been proven before it was read in evidence.   The payment should not have been made in promissory notes.   Government never extended such favors to purchasers of large grants, made under the former

authority. The money, received by Miles after the time required for payment, was not an official act; and his receipt was but a private paper not executed by virtue of any law.

VI. Under the 15th Section of the Act of Limitations, (Hart. Dig. Art. 3391,) a color of title is raised by possession under a certificate and survey. These papers had ripened into a patent. The certificate was issued shortly after the Land Office opened. The survey followed immediately. The patent did not issue till October, 1845. The suit was brought July 17th, 1847. The defendants took actual possession in 1843, and claimed the benefit of three years limitation. The best evidence of the color of title was a certified copy of the certificate and field notes.

VII. We have no objections to the principles laid down in McKinney v. Hancock; there is nothing novel in them. They exhibit the law. One point, though not arising directly in that case, was named by one of the Court, i. e. touching the purchase money. In the case before us, the payments were to be made according to Article 22 of the Colanization Law in four, five and six years. From what time? From settlement, " dentro de seis anos de establacidos ;" that is, from the date of his being put into possession of the land by the Commissioner; that is, the date of the decree. This is proved by Article 28, where settlers have liberty of disposing of land by will " desde el dia de su establacimiento, aunque no lo tenga cultivado." So the decree. The Commissioner, in the name of the State, puts the grantee in real, actual, corporeal and virtual possession. Is not the party then established on the land? The payments then are due 5th July, 1838, 5th July, 1839, and 5th July, 1840. But not a dollar is paid until 1842, and then only in depreciated paper. The Legislature never favored such grants by allowing purchasers to pay such debts in such paper. What is the result of this non-payment? In the language of the law: " Pena de peder su terreno el que faltare a algunos de los plazos." Now if a grantee fails to perform other conditions, such as cultivation of the land with-

in six years, &c., the law provides for an inquest of office, "*la autoridad politica procedera luego a recogerselo y recogerles el titulo.*" (Art. 26.) But in the case of non-payment, the law makes no such inquest necessary; but, at the time of any non-payment of what becomes due, the purchaser loses his land.

The language of Article 22 is not unlike that of Article 30, already defined by this Court, in case of aliens; "*no conservara su terreno,*" and "*pena de perder su terreno,*" are the sentences of the law. The inquest in advance, part of the contract, known to both parties.

VIII. The Court is referred to Article 27, Colonization Law. The right to alienate applies only to those who have acquired lands by purchase. As the right to sell is derived from the law, its language cannot otherwise be construed. The latter part of the Article shows that the law contemplates the subsequent purchaser shall only have to perform the condition of cultivation.

IX. On the question of the jurisdiction of Alcalde Woods, which was the jurisdiction of Liberty. Under the government of Coahuila and Texas, the counties were known as municipalities. So also in 1835. (Journal of Genl. Council, 341.) The old Constitution calls them counties. The first act fixing the boundaries of Liberty county, calls for the south boundary of Houston county. (Act December 18th, 1837, p. 84.)— Houston county was taken from the south part of Nacogdoches county. (Act June 12th, 1837, p. 270.) Then the south boundary of the county of Nacogdoches was the north boundary of the municipality, i. e. after the municipality of Liberty was taken out of that of Nacogdoches. Now as Polk county was taken out of the north part of Liberty, the return of John R. Johnson shows that no part of the land covered by McKim's patent, or claimed by him, lies within the jurisdiction of Liberty. Hence, as the order was to the Alcalde within whose jurisdiction the lands denounced might lie, Woods had no right to go beyond it. The county of Nacogdoches was

never defined by the present government, but at the first meeting of the Congress of the Republic, the Chief Justices were required to report the boundaries (not to make boundaries) of their counties to the Secretary of State. (Page 133.) Upon these reports the lines between the ancient municipalities of Nacogdoches and Liberty is exhibited, as in the above re-cited acts.

WHEELER, J. This was an action of trespass to try title, brought by the appellees against the appellant Ryan, in the county of Polk, on the 17th of July, 1847. The defendant pleaded " not guilty," and the statute of limitations. After repeated continuances, the other appellant, McKim, was permitted to become a party defendant, and pleaded "not guilty," title in himself, and limitation. After further continuances, the defendants pleaded to the jurisdiction of the Court in the county of Polk, averring that they do not possess or claim any part of the land claimed by the plaintiffs, as lying within the county of Polk; but the land claimed and possessed by them, lies entirely within the limits of the county of Trinity, formerly a part of Houston county. On motion of the plaintiffs, the plea to the jurisdiction was striken out. It appears, from a bill of exceptions in the record, that " the plaintiffs offered in evidence a certified transcript, from " the Land Office, of a Spanish title to De la Garza, for five " leagues of land; also, a transcript of a power of attorney, " from De la Garza to Pierre Blanchet; also, a deed from " Pierre Blanchet; also, a receipt from Miles for government " dues," (all of which are referred to as contained in the statement of facts,) "to the reading of all of which the defend-" ant objected, but the Court overruled the objections, and " allowed the papers to be read; to which the defendant ex-" cepts. The defendant offered in evidence a certified copy " of the survey for him as assignee of Polly Ryan, also a " certified copy of her certificate. He also offered to prove " that the condition of cultivating the land within six years

" and setting up permanent land marks, had not been per-
" formed;" to which the plaintiffs objected, and their objec-
tions were sustained by the Court.

The title under which the plaintiffs claimed, the copy of
which was given in evidence, was issued by the Alcalde of
the "jurisdiction of Liberty," on the fifth day of July, 1834,
by virtue of a concession for five leagues, made by the Gov-
ernor of the State of Coahuila and Texas, in October, 1830,
to Augustin Martinez De la Garza, as a purchaser under the
24th Article of the Colonization Law of the 24th of March,
1825. The power of attorney, from Garza to Blanchet, bore
date on the 18th day of March, 1833; and empowered Blan-
chet to apply for and obtain the title and possession of the
land conceded; he designating the land and subjecting him-
self to the obligations and requirements of the law; and
having done so, to sell and dispose of the land at pleasure.
Under this power, Blanchet made the sale, under which the
plaintiffs claim the league in question, in 1839. The plain-
tiffs gave in evidence a survey of the land made by order of
the Court in April, 1853, from which it appeared that a part
of the league of land, sued for, was in the county of Polk, and
a part in Trinity county. One Kitty Ryan was the only per-
son then living on the land. One Hornsby had a part of his
field on it, but acknowledged that he held under the plain-
tiffs. The certificate, referred to in the bill of exceptions as
having been offered in evidence by the defendant, was a first
class headright certificate, issued in March, 1838; the survey
thereupon was made in April of the same year. The defen-
dant gave in evidence a patent for the land issued on the 29th
day of October, 1845, to the defendant, McKim, as assignee
of Ryan. He also proved that Polly Ryan went to live upon
the land, in 1843, but removed therefrom in about a year;
that her son, James Ryan, moved there with her in 1843;
that he died in about a year thereafter, and that Kitty Ryan
was his widow; that the defendant McKim " got James
McKim to go there," and that Kitty Ryan has lived there
ever since.

The defendant's attorney asked of the Court several instructions, among which were the following, which were refused :

" If the purchase money was not paid in three, four and five " years, the land was forfeited upon the failure of either pay-" ment by the time required." " The payment and receipt of " the money after the time it was due, could not save the title."

" A purchaser under decree 16 of Coahuila and Texas, had " no authority to sell until he had proved his title."

Defendants ask the Court " to give the jury in charge Ar-" ticles 24, 27, 28, and 22 of decree 16, or Colonization Law " of 24th March, 1825."

There was a verdict and judgment for the plaintiffs, and the defendants appealed.

The objections to the judgment, urged on behalf of the appellants, relate, 1st. To the jurisdiction of the Court. 2nd. The admissibility of the plaintiffs' evidence of title, and *its* legal effect. 3d. The rejection of evidence offered by the defendants. And 4th. The refusal of instructions asked by them.

The plea to the jurisdiction of the Court was rightly rejected. It was pleaded after the defendants had answered fully to the merits, and had thereby submitted to the jurisdiction of the Court in the county of Polk. It was then too late to plead to the jurisdiction, matters merely in abatement of the suit. Moreover, the statute authorizes the plaintiff to bring suit in the county " where the land or a part thereof is situated." (Hart. Dig. Art. 667.) The plea did not controvert the fact that the land, for the recovery of which the suit was brought, or a part thereof, was situated in that county. It did not negative the existence of the facts necessary to give the Court jurisdiction ; and must have been held insufficient, though it had been pleaded in time. But, it appeared upon the trial, that a part of the land was situated in the county in which the suit was brought, and there was, therefore, in point of fact, no well founded objection to the jurisdiction of the Court.

The objections now urged to the admissibility of the plaintiffs' evidence of title, do not appear to have been taken, nor do the defendants appear to have made known the grounds of their objection to the evidence at the trial. And nothing is better settled, than that a judgment will not be reversed upon objections of the character of the present, first taken in the appellate Court. A party objecting to written evidence, for any cause not going to its relevancy or competency, but only to the manner of its authentication or proof, must specially assign the grounds of his objection at the trial: for, the party, offering the evidence, might then have it in his power to meet and obviate the objections, by other evidence; and, moreover, the Court, as has been said, in deciding upon questions arising at the trial, is not bound to do more than respond to the questions raised, in the terms in which they are propounded. (5 Tex. R. 467; 8 Id. 58, 162; 9 Id. 97; 10 Id. 520.)

The defendants objected generally to all the plaintiffs' written evidence. The objection was of that indiscriminate and sweeping character, which subjects it to the observation and ruling of this Court in the case of Houston v. Perry and Williams, (5 Tex. R.,) and it is unnecessary to notice the several objections, now first urged to the admissibility of the evidence introduced by the plaintiffs, which do not bring in question its relevancy or competency, but only the manner of its authentication. It is a sufficient answer to these objections, that they were not taken at the trial.

The objections, urged to the effect given to the plaintiffs' evidence, or to the validity of his title, require notice. And it is objected, that the power of attorney from Garza to Blanchet, evidences a sale, which the former could not make until after he had obtained the final title.

If it be conceded that the power of attorney in question is evidence of a sale, it seems to be sanctioned by the 27th Article of the law, which declares that " those who have acquir- " ed lands by purchase, can alienate the same at any time,

50

"provided the successor obligates himself to cultivate the "same within the same term as was obligatory on the original "proprietor." We are aware of no provision of law, which forbade the grantee, who acquired by purchase under the 24th Article of the law of the 24th of March, 1825, to sell so soon as he had obtained his concession, and before the final title was issued. It is a right which would appertain to the grantee on general principles. The right of property in the concession includes the power of disposition, subject only to such restrictions and qualifications as may be imposed by law. Where the law imposes no restriction, the power is absolute. And there does not appear to have been any restriction upon the power of alienation imposed by the law in this case, except that contained in the 27th Article, that the purchaser should be obliged to perform the condition of cultivation.

The objection to the title on account of the non-performance of the conditions annexed to it, is answered by the opinion of the Court in cases heretofore decided, and will not require further notice than a reference to those decisions. (Hancock v. McKinney, 7 Tex. R.; Murchison v. Hall, 10 Id. 461 ; Swift v. Herrera, 9 Id. 263.)

It is suggested that the land in question did not lie within the municipality of Liberty, and consequently that it was not within the jurisdiction of the Alcalde who extended the title. But this suggestion is not supported by the record. It does not appear by any evidence in the record or by any law to which we have been referred, that the municipality of Liberty was comprised within the same boundaries as the county of Liberty ; or that the land in question was not within the limits of that municipality. And if the Alcalde had exceeded his jurisdiction, it devolved on the defendants to show it. The presumption is that the officer, in issuing the title, acted upon a subject within his jurisdiction, until the contrary appears.

The certificate and survey thereupon, offered in evidence by the defendants, were rightly rejected, for the reason that the certificate was not accompanied by evidence of its having been

recommended as genuine. It did not appear that the patent introduced in evidence, was issued upon this certificate; and there was no evidence of its genuineness. The object of the introduction of the evidence, was to establish color of title in the defendants, in support of their plea of the statute of limitations. But if the evidence had been admitted, there was not such possession as was necessary to make good the defence of limitation. The title, or color of title was averred to be in the defendant McKim. He was not in possession; and the defendants failed to prove that his co-defendant, who was the only person in possession a sufficient time to complete the statutory bar, held the possession under him or in his right. If, therefore, the evidence had been admitted, it could not have changed the result. But there was no error in its rejection, for the reason before stated.

Nor was there error in refusing to give in charge to the jury, the several Articles of the Colonization Law, referred to by their numbers, in the instruction asked. Apart from the statute, which directs in what manner instructions may be asked, (Hart. Dig. Art. 754,) and does not sanction the mode proposed, the manner of asking the instructions, in this instance, was novel and unprecedented; and was calculated to create the apprehension that counsel desired rather to bewilder and mislead, than to enlighten the jury as to their duty. With equal propriety might counsel have asked of the Court to give in charge to the jury the entire law, or volume of laws, in which the provisions, referred to, were contained.

It only remains to notice one other objection to the judgment, that is, that the plaintiffs failed to deraign their title to twenty acres of the land for which they had judgment. And it is true, that in the conveyance by Blanchet, of the league of land in controversy, there was a reservation, in the deed, of twenty acres; yet, by the judgment, the plaintiffs recovered the entire league. This, doubtless, was an oversight; the attention of the Court not having been called to the fact of the reservation. It will require that the judgment be so reformed as to

conform to the evidence; and such judgment will be here rendered as the Court ought to have rendered.

Judgment re-formed.