H. B. MARTIN AND ANOTHER V. JAMES PARKER AND OTHERS.

The want of consent by the empresarios to a grant of land within their colony does not invalidate the grant. The case of McGehee v. Dwyer, 22 Texas R., 435, cited and approved.

Municipalities were established with reference to the convenience of the inhabitants of certain districts over which the authorities were to exercise civil government, and without any necessary reference to or dependence upon the boundaries of the colonies within which they might be situated.

Austin's colony, as originally constituted, had no limit assigned to it on the north, and the jurisdiction of the municipality of San Felipe de Austin was originally commensurate with the original limits of the colony; and although in 1827 a limit on the north was assigned to the colony, yet the jurisdiction of the municipality was not thereby circumscribed, but appears to have continued to its original extent up to the establishment in 1834 or 1835 of the municipalities of Viesca and Mina, with jurisdiction over the inhabitants and territory north of the boundary assigned to Austin's colony in 1827.

If, previous to the establishment of these last named municipalities, there was any limit on the north to the jurisdiction of the municipality of San Felipe de Austin, it is matter of law, and is to be shown by the party who assails the jurisdiction.

The presumption, as heretofore repeatedly held by this court, is that the officer, in issuing the title, acted upon a subject within his jurisdiction, until the contrary is made to appear.

It seems that the reference in Decree No. 265 of Coahuila and Texas to the " northern " boundary of the municipality of Austin, is a mistake in the publication of that decree ; it being manifest that the southern and not the northern boundary was intended.

An action of trespass to try title is maintainable in our courts as well upon an equitable as upon a legal title.

And although after a great lapse of time, a court of equity will not entertain a suit by a vendee against his vendor for the specific performance of a contract to convey ; yet it is not to be inferred therefrom that a good and valid title, sufficient to enable the holder to maintain or defend an action for the property, will by reason of the lapse of time become inoperative and ineffectual as a title in consequence of the want of some formality essential to constitute it a legal title, as contradistinguished from an equitable one.

It is well settled that persons who acquired lands by purchase under the 24th article of the colonization law of 1825, could sell as soon as the grant was obtained and before the title of possession was issued.

A formal act of sale by the original grantee, with a power to the purchaser to obtain the title of possession, must be held to constitute the purchaser the absolute owner of the property, when he was put into possession of the land and the evidence of title by the proper officer of the government.

The signatures of the instrumental witnesses were not necessary in order to constitute as an authentic act, an act of sale bearing the signature of a judge or alcalde with those of two assisting witnesses,—the office of the assisting witnesses being to give to the signature and seal of the judge or alcalde who acts in the place of a notary the force and effect which the seal and signature of the notary would have without witnesses.

A plaintiff, who at the time of instituting his suit had a good *prima facie* title, had a right to protect himself by buying up a conflicting outstanding title, even after issue joined.

APPEAL from Bell. Tried below before the Hon. R. E. B. Baylor.

This was an action of trespass to try title, instituted by Martin against the several defendants, on the 21st of April, 1854, for the recovery of one league of land in Bell county. The land in controversy was part of a tract of three leagues which were a portion of an eleven league grant made by way of sale to Antonio Manchaca by the State of Coahuila and Texas, on the 2nd day of November, 1833. The title was issued by Luke Lesassier, constitu-

tional alcalde of the municipality of San Felipe de Austin. The original concession to Manchaca, was dated the 19th of May, 1830. On the 1st of September, 1830, Manchaca executed a power of attorney to Allen Reynolds, empowering him to apply for and receive the final title and possession of the land granted; and on the succeeding day, September 2nd, 1830, Manchaca executed to Reynolds an act of sale of the land. Both of these instruments were executed before the alcalde of San Felipe, and were signed by him and by two assisting witnesses, but were not signed by the instrumental witnesses. On the 6th of March, 1840, Reynolds' heirs made a conveyance of lands, including the tract in controversy, to Levi Jones; and on January 26th, 1850, Jones conveyed the land in controversy to the plaintiff, Henry B. Martin.

The defendants pleaded the statutes of limitation and other defences not necessary to particularize, and assailed the plaintiff's title on the several grounds reviewed in the opinion.

On November 21st, 1855, W. H. Cundiff intervened, claiming the land in controversy under a deed to him from Manchaca, the original grantee, of date March 14th, 1855.

To the petition of intervention, the plaintiff and the defendants pleaded "not guilty," and the plaintiff also set up the statute of limitations of three years.

The intervenor and the defendants, by way of showing outstanding title adverse to the plaintiff, introduced at the trial a transcript from the District Court of Washington county of a suit brought by Maurice Hibenstreet against the heirs of Allen Reynolds, (through whom plaintiff deraigned his title,) in which suit a decree was rendered at the March term, 1841, in favor of Hibenstreet against the heirs, for the recovery of five leagues of land, including the land now in controversy. The transcript did not state at what time the suit was commenced or the petition filed, and consequently did not show that the suit was pending at the date, March 6th, 1840, when Reynolds' heirs conveyed to Jones, plaintiff's vendor.

In rebuttal, the plaintiff introduced a deed from Hibenstreet to

him for the land in controversy, dated April 1st, 1857, pending this suit.

At the Spring term, 1857, a trial was had and there was verdict and judgment in favor of the defendants for so much of the league as they claimed, and in favor of the plaintiff against the intervenor for the remainder, being about three-fourths of a league. The plaintiff moved for a new trial as against the defendants, and the intervenor moved for a new trial as against the plaintiff; and both motions were overruled. Both plaintiff and intervenor appealed, and assigned errors which are sufficiently indicated in the opinion.

*J. A. & R. Green*, for appellant Martin.

*George F. Moore* and *Hancock & West*, for appellant Cundiff.

*Barber*, for the appellees, defendants below.

WHEELER, C. J. The plaintiff's appeal cannot avail him unless he has a good title. It is material, therefore, first to consider the objections to his title. These are, 1st, want of consent of the empresarios of the colony within which the land was selected. 2nd. Want of power in the alcalde of San Felipe de Austin to issue the title. 3d. That the boundaries of the land cannot be found and identified.

The first point was decided in the case of McGehee v. Dwyer; and it was held that the failure to obtain the consent of the empresarios did not invalidate the title. (22 Tex. R., 435.) The recital in the grant leaves little doubt that- such consent was, in fact, obtained in this case; but if not, the want of it cannot now be held to annul the title.

The second objection to the title is based on the supposition that the land was not situated within the municipality of San Felipe de Austin, and that the alcalde of that municipality exceeded his jurisdiction in issuing · the title. The same objection has been urged in other cases not materially different from the present, and has been held untenable. (Hancock v. McKinney, 7 Tex. R.; Ryan v. Jackson, 11 Tex., 391.) It is to be ob-

served that the boundaries of the municipality of San Felipe de Austin were not necessarily the same as those of Austin colony. The former had no necessary connection with or dependence upon the latter. Municipalities were established with reference to the convenience of the inhabitants of certain districts over which the authorities were to exercise civil government; and without any necessary reference to or dependence upon colonial boundaries. Thus, in 1832, the municipality of Brazoria was carved out of that of Austin. (Laws and Dec. Coahuila and Tex., dec. No. 196.) In 1834, the municipalities of Matagorda and San Augustine were established, (Id., dec. 265,) and the same year San Patricio and Mina. (Id. dec. 283.) In defining the limits of these several municipalities there is no reference made to the boundaries of any colony, as such, except in one instance in bounding the municipality of Mina. It is quite evident that colonial boundaries were no farther regarded than convenience might dictate in prescribing the boundaries and jurisdiction of municipalities. Austin's colony had originally no limit assigned to it on the north. Its northern boundary was not defined until in 1827. (Land Laws of Cal., Or. and Tex., p. 573, 613.) In 1823, the Governor, by official act, gave the name of San Felipe de Austin to the chief town to be established in the colony, which became the seat of justice of the municipality of that name. Its jurisdiction appears to have been co-extensive with the colony as at first granted, and without any limit on the north; and when, in 1827, a boundary was assigned to the colony on the north by the road leading from Bexar to Nacogdoches, the jurisdiction of the municipality seems to have been left without any such restriction. So far as appears, the authorities of the municipality continued to have and exercise jurisdiction beyond the northern boundary of the colony, as far as occasion required, until the new municipalities of Viesca and Mina were established and organized in 1834 or 1835, with jurisdiction over the inhabitants and territory north of that boundary. Until that period, no law that we are aware of had fixed any limit to the jurisdiction of the municipality of San Felipe de Austin on the north; and it is believed that no such limit had been prescribed; but that the municipal authorities habitually and right-

17

Martin v. Parker.

fully exercised jurisdiction over the territory as far as there was occasion. If there was any such limit, it was matter of law; and it devolves on the party asserting that the jurisdiction exercised by the officer was a usurped and unauthorized exercise of authority, to show it. As has been repeatedly said by this court, the presumption is that the officer, in issuing the title, acted upon a subject within his jurisdiction, until the contrary appears; and it can only be made to appear by showing that he exceeded the limits which were assigned to him by law. No law has been, and it is believed no law can be shown limiting the jurisdiction of the officer to the northern boundary of Austin's colony, until a new municipality was erected with jurisdiction over that territory, which was subsequent to the issuance of the title in this case. We are referred to Decree, No. 265, (Laws & Dec. of Coahuila and Tex., p. 242,) where, in describing the limits of the municipality of Matagorda, the "northern" boundary of the municipality of Austin is called for; from which the inference is drawn that it must have had a northern boundary. But this was manifestly a mistake in the publication of the decree, as the geography of the country and the relative situation of these municipalities show, and as will be seen by reference to any correct map of the country. It was the southern and not the "northern" boundary of the municipality of Austin, that was meant by the call for that boundary in the decree.

We are of opinion that the title was rightfully issued by the alcalde of the municipality of Austin, as the alcalde of the municipality to which the land "pertained." This subject may be more fully considered when we come to dispose of the case of Barrett v. Kelly, now before the court, where it is illustrated by a mass of evidence, showing that the authorities of that municipality habitually exercised jurisdiction north of the northern boundary of the colony, without question at that day.

Upon the question of identity of the land, the jury decided for the plaintiff, in finding for him the land not claimed by the defendants; and we cannot say their finding was not warranted by the evidence.

This disposes of the objections of the defendants to the original

title under which the plaintiff claims; but there were objections urged by the intervenor and defendants to the evidences of title in the plaintiff, produced by him upon the trial, which it is necessary to consider.

It is objected that the deed from Manchaca to Reynolds of the 2nd of September, 1830, having been executed before the title of possession was issued, did not pass the legal title, but a .mere equity, which not having been perfected into a legal title by suit for specific performance, has become inoperative and worthless by the lapse of time.

It is to be observed that an action of trespass to try title can be maintained in our courts as well upon an equitable as upon a legal title. And although after a great lapse of time a court of equity will not entertain a suit by the vendee against the vendor for specific performance of a contract to convey, yet it is not to be inferred from this that a good and valid title, sufficient in law to enable the holder thereof to maintain and defend an action for the property, if it be wanting in some formality essential to constitute it a legal, as contradistinguished from an equitable title, will, in consequence, by the lapse of time, become inoperative and ineffectual as a title. The application of such a doctrine to a title which invests the holder with the legal ownership and absolute power of disposition of lands, we think inadmissible.

But at the time of the acquisition of the title by Reynolds, the common law distinction between legal and equitable titles did not obtain. Before the deed in question was executed, Reynolds had received a power of attorney from Manchaca to apply for and obtain the title of possession. Repeated decisions of this court have settled, that those who acquire land by purchase under the 24th article of the colonization law of the 24th of March, 1825, could sell as soon as the grant was obtained, and before the title of possession was issued. (Ryan v. Jackson, 11 Tex. R., 391; 14 Id., 191; Fulton v. Duncan, 18 Tex. R., 34.) A power to apply for and obtain the title and sell, the attorney being required therein to take upon himself the fulfilment of the obligation and requirements of the law, has been considered as evidencing a sale, valid under the colonization law. (11 Tex. R., 391.) Here there was

a formal act of sale, with a power to obtain the title of possession. This, we think, must be held to constitute the purchaser the absolute owner of the property, when, under the power conferred, he came into the possession of the land. The vendor having authority to sell expressly conferred by the law, it must, we think, be held that the act of sale operated to pass the title in full and absolute property to his vendee, when the latter was put in possession of the land and the evidences of title by the proper officer of the government. Whether strictly and technically a legal, as distinguished from an equitable title, or not, we think it was such a title as constituted ownership, with the consequent right and power to alienate and dispose of the property absolutely. We therefore do not think the objection tenable.

It is further objected to the act of sale of the 2d of September, 1830, that it was not an authentic act, because not signed by the instrumental witnesses, and was therefore inadmissible without proof of its execution. We do not think the objection well taken. In McKissick v. Colquhoun, (18 Tex. R., 151,) Chief Justice Hemphill said: "The signature of a judge or alcalde, acting in place of a notary, authenticated by two assisting witnesses, has all the force and effect of the signature and seal or rubric of a notary." It is true, this was said in a case in which both the instrumental and assisting witnesses had signed; but it is evident the signature of the former was not deemed essential to the authenticity of the instrument. Such is the opinion of Escriche in the passage cited by counsel for the appellant. And such must be the inference from what is said to be the office of the assisting witnesses, which is, to give to the signature and seal of the judge or alcalde who acts in the place of a notary, the force and effect which the seal and signature of the notary would have without witnesses. The practice, it will be seen by consulting the titles and instruments which have been contained in the records of causes decided by this court, was not uniform. In some cases the instrumental witnesses signed, and in others only the assisting witnesses. But it has never been considered that signing by the former was essential to the authenticity of the instrument.

Again, it is objected by the intervenor to the plaintiff's right to

recover in this action, that there was a superior outstanding title in Hibenstreet, by virtue of the decree in his favor of the Washington District Court, at the March Term, 1841, against the heirs of Reynolds. And it is argued, that the plaintiff's vendor, Jones, is to be charged with notice of the outstanding title, because, it is said, he bought from a party to the suit during its pendency. The evidence to establish *lis pendens* at the date of the purchase by Jones of the heirs, the 6th of March, 1840, is wholly insufficient, and ought to have been excluded. The records of the court ought to have furnished better evidence of the time of instituting the suit. Whether they did or not, the parol evidence introduced proved nothing upon that point. But if the plaintiff's vendor had notice of the title of Hibenstreet, there is nothing in the evidence to affect the plaintiff with such notice. There is no evidence that the decree of the Washington District Court had been recorded prior to the date of his purchase, on the 26th of January, 1850. (Story's Eq., § 409.) Moreover, the outstanding title, it would seem, was barred by the statute of limitations when set up by the intervenor; or, if not barred, it was extinguished by having been bought in by the plaintiff before the trial. It was not a present subsisting and operative title at that time, and could not, therefore, defeat a recovery by the plaintiff. The latter having, *prima facie*, a good title at the time of instituting the suit, had a right to protect himself by buying in the outstanding title, even after issue joined. (Adams on Eject., 32, n.; 1 Rawle, 373; 3 Johns., 375; 6 Id., 267; 6 Pet., 375.)

It is objected by the defendant, that the deed of the 6th of March, 1840, from the heirs of Reynolds to Jones, was not properly executed to pass the title of the married woman and the minor whose interest it purported to convey. Whether this be so, it is unnecessary to inquire, as it is not disputed that it did pass the title of some of the parties in interest, which was sufficient to enable the plaintiff to maintain the action. (Croft v. Rains, 10 Tex., 520.) And having since acquired the whole interest by buying in the outstanding title, which embraced that of all the heirs of Reynolds, the inquiry has become immaterial. This disposes of the objections to the title of the plaintiff, urged

by the defendants and intervenor; and it results, that the right of the intervenor must depend upon the question, whether he was a *bona fide* purchaser without notice of the plaintiff's older title. It will suffice to dispose of this question, that he has not shown himself to be a purchaser; there is no evidence that he paid the purchase money; and, moreover, the plaintiff was in possession at the date of his purchase. The case of Watkins v. Edwards, (23 Tex. R., 443,) is decisive of the question adversely to the pretensions of the intervenor as an innocent purchaser without notice of the prior title. As between the plaintiff and intervenor, there is no error in the judgment; and it is affirmed, and the case is disposed of, in so far as the intervenor is concerned.

But the jury found for the defendants the land claimed by them as against the plaintiff. As they found the residue for the plaintiff, it is manifest that their finding was not upon any supposed defect in his title, or the want of a survey to identify the land. It must have been upon the defence set up by them of the statute of limitations. But there does not appear in the record any proof of an adverse possession by the defendants sufficient to enable them to claim the bar of the statute. The verdict is therefore unsupported by the evidence, and the court erred in refusing a new trial; for which the judgment must be reversed and the cause remanded.

Affirmed, as to intervenor; reversed and remanded, as to defendant.

Justice Moore did not sit in this case.