## MARCUS L. FULTON v. MAHALA DUNCAN.

Where there was a concession of five leagues of land, and in the power of attorney to select, obtain title, and sell the land, and in the act of possession of two leagues, (see Fulton v. Bayne, *post*,) the concession was recited as a concession of eleven leagues ; it was held that the discrepancy was immaterial, and must be considered a clerical error in the power of attorney and act of possession, even although, considering the other particulars of identity, the concession and subsequent documents were now to be regarded as separate and distinct instruments or evidences of title.

Fulton  v.  Duncan.

But they are not to be now so regarded. The concession accompanied the power (and act of possession) was passed upon by the proper authorities, the Alcalde and Commissioner, and incorporated into the final title, of which it is a constituent part; so that there can be no possible mistake or doubt, nor can it be made a question as to what concession it really was, upon which the title issued. That is *res adjudicata*, evidenced by the title itself.

Where the Court instructed the jury, that if they believed from the evidence before them, that De la Garza, (a native Mexican to whom a concession on sale was made,) in making Chambers his agent and attorney (to designate the land, obtain the title and sell,) and Chambers, in accepting and carrying out said power, both had for their object to confer upon Chambers indirectly, the title in his own right to the land claimed by the defendants (under them ;) or that De la Garza was a mere passive instrument in the hands of Chambers to enable him to obtain this land in his own right; that would show that they were perpetrating a fraud upon the Government, and it would be no bar to the right of the plaintiff (who claimed by subsequent location) to recover ; it was held that the instruction was erroneous.

The other objections to the title, urged in argument by the appellee, require no other answer than a reference to the decisions of this Court, where they have been fully considered and disposed of.

Appeal from Brazos.   Tried below before the Hon. John H. Reagan.

Suit commenced December 17th, 1850, by Mahala Duncan the appellee, against Alexander de la Garza and Marcus L. Fulton. The petition alleged the location of the plaintiff's headright for a league and labor at a certain point on the Brazos river in 1841 ; its recommendation by the Travelling Board ; the survey and return thereof, and payment of the government dues by the plaintiff ; that one Alexander de la Garza, did on, and under the pretence of a title, issued to him on the 20th day of October, in the year 1831, by the government, then set up and assert, and still continues to set up and assert, a right and claim to eleven leagues of land, two leagues of which are located on the eastern margin of the Brazos river, near and above the road which goes from Nacogdoches to Bexar the lines and boundaries of which are as follows, as pretended by said Alexander de la Garza, including within them the

league and labor of land owned by your oratrix as aforesaid, that is to say, commencing, &c.

It is further shown that the said Alexander de la Garza filed, and caused to be filed, the said pretended title for the said eleven leagues of land in the General Land Office of Texas, and entered, and caused to be entered, the said survey and plat of said two leagues, on the County Surveyor's map in the said counties of Robertson and Brazos, where said land lies and did lay, and on the corresponding map in the General Land Office of Texas, representing and showing, or pretending to show, that a title had been granted to him by the Government for said two leagues of land. Whereby your oratrix has been, and still is prevented from obtaining a patent, as she had a just and equitable right to do, from the Government, for her said league and labor of land, although she has often applied to the proper authority of the State for said patent. But said patent has been, and still is refused to and withheld from your oratrix, on the ground that said land has already been granted to the said Alexander de la Garza.

It is further shown that afterwards, that is, on the 15th day of November, in the year 1845, the said two leagues of land herein above described, were conveyed and transferred by the said Alexander de la Garza, by his agent and attorney in fact, to John P. Davidson, and afterwards, that is, on the 1st day of December, 1845, the said two leagues were sold and conveyed by the said Davidson to Marcus L. Fulton, by whom, under said conveyance, they are now held and claimed as the pretended owner thereof under said conveyance. Your oratrix further shows, that said Marcus L. Fulton lives in the county of Austin, in the State of Texas, and she prays that he may be served with process herein and made defendant to this bill, and compelled specially, circumstantially, and particularly to answer the charges and allegations thereof on oath.

But your oratrix avers and shows that the said pretended title and claim of the said Alexander de la Garza was and is

illegal, fraudulent and void, because it was originally obtained covertly and by fraud; because it was not issued or signed by any proper or competent authority; because the land lay within the limits of a colony, from the Empresario of which his approbation and sanction of the grant never was obtained; because the said two leagues never were legally surveyed, and the survey, if any, was not made in a legal and authorized form, and was not approved by the proper authority; because the public dues on said land never were paid by said Alexander de la Garza; because no valid or *bona fide* grant or title ever was made by the Government for said land to said Alexander de la Garza; because your oratrix located her said headright league and labor of land, as aforesaid, *bona fide* and in good faith, and in the same manner paid the public dues thereon, without any knowledge of the said pretended title of the said Alexander de la Garza. And your oratrix avers that she has been in the peaceable possession of her said league and labor of land, cultivating, using and enjoying the same, and paying the taxes therefor, not only for three and five, but for ten years last past, and that her said survey and field notes are, and for the length of time aforesaid, have been duly recorded. It is further shown that the residence of the said Alexander de la Garza is unknown, &c.

Prayer that the old pretended title be declared null, and that the defendants be enjoined from interposing the same, to prevent plaintiff from obtaining her patent; and for general relief. Process prayed for Fulton and de la Garza.

An amendment to the petition alleged that the pretended Commissioner, Ira R. Lewis, by whom the same was granted, had no authority to make said grant; that the grant was not upon stamped paper in the manner required by law; that no grant for said land ever was in fact made and consummated to said Alexander de la Garza; that the grant of said land, if ever finally made at all, was to Thomas Jefferson Chambers, an American, and not a Mexican, and a person to whom it

never was conceded, and by whom it was absolutely and unconditionally sold on the 8th day of June, 1833 ; that no survey of said land ever was ordered, or made by any scientific surveyor. appointed for that purpose, and that said land was surreptitiously obtained from the Government by fraud and collusion, between the officers acting and the parties interested therein, without the authority, and without the forms and sanctions prescribed by law ; that said pretended title is without any established lines, boundaries or land marks, and never was in fact surveyed preparatory to said grant or pretended grant to said de la Garza, and this said complainant is ready and prepared to verify and prove as this Court shall direct.

There was an answer filed for both defendants. There was no evidence of any importance, except the documentary evidence referred to in the petition. The surveyor made some difficulty in finding the De la Garza survey. One or two of the witnesses said they had heard of such a man as De la Garza about San Felipe. a long time ago. Neither party had been in possession before the commencement of the suit. The title to De la Garza, in evidence, was a translation of the original from the General Land Office, and was given in evidence by the plaintiff. It was as follows :

Petition of Alexander de la Garza of the village of Austin, dated December 2nd, 1830, to the Governor of Coahuila and Texas, for a concession by way of purchase of five sitios of land.

Concession accordingly, under the 24th Article of the Colonization Law of March 24th, 1825, giving to the grantee the benefit of the 22nd Article of said law ; signed by Viesca, countersigned by Santiago del Valle, Secretary, dated Leona Vicario, 15th February, 1831. (See the next case of Fulton v. Bayne, as to this date.—REPS.)

Power of attorney as follows : (Authentication of the paper.) In the village of San Felipe of Austin, on the 18th day of the month of December of 1832, before me Horatio Chries-

man, first Alcalde of said village, and instrumental witness, in addition to those of my assistance, with whom I act in the absence of a Notary, appeared the citizen Alexander de la Garza, a resident of the same, to whom I give faith, know, and said that having secured from the Government of the State a concession of eleven sitios of land, dated in the city of Leona Vicario, on the 15th of February, 1831, and desiring the possession of said eleven sitios, and to sell them or part of them to cover his necessities, and not possessing the necessary information for that purpose, he has appointed an attorney well qualified for the purpose, of intelligence, activity and prudence, and finding these qualities in the citizen Thomas Jefferson Chambers, he had determined to confer on him ample powers for said end, and putting it in execution in the manner and form that may be best according to right, have sufficiently confirmed to him. He grants, to give all his power complete, ample, general and as sufficiently as legally required, to the said Thomas Jefferson Chambers, a resident of this village, that he may, in his name and representation, present himself to the Commissioner, or any other competent authority, and select, mark, designate and ask possession of said eleven sitios of land, according to the laws on the matter and the concession of the government, and to receive the corresponding titles, to cultivate said lands and to pay the dues to the Government, and to comply generally and particularly with all the requisites of the laws on the matter, until complete and perfect titles are secured ; to sell, alienate, lease, hypothecate, barter, use dispose of the eleven sitios of land at his election, as a thing properly his own, on the terms he may think best, for high or low prices, on a credit, or for money in hand, making the necessary instruments of writing with all the clauses renouncing the laws in his favor, and obligations necessary to the stability of said acts, and the most efficient, irrevocable and absolute power, for all expressed, and everything necessary, and the same he confers on him, with incidents and dependents, an-

nexes or connexes, free, frank and general administration, re-levation, and authority to substitute in all or in part, to revoke the substitutes and appoint others anew, and the substitutes to substitute also, and to sign that which he may execute for himself or through the medium of his substitutes and attor-neys, obligating his property, moveables, lands, rents, rights and actions, present and future, authorizing the tribunals, which of such things take care and are bound to notice, that they may compel its observation, as by definitive decree of a competent tribunal passed, or a thing adjudicated and con-sented to; that as such he received it. He renounces all the laws, which might favor him with that which prohibits his general renunciation. Thus he granted and signed with me and instrumental witnesses, who were the citizens Ira R. Lewis and Nathaniel Townsend, present and citizens of this jurisdic-tion. I give faith with those of my assistance.

| IRA R. LEWIS, | ALEXANDER DE LA GARZA. |
|---|---|
| NATHANIEL TOWNSEND. | his ⋈ mark. |
| | HORATIO CHRIESMAN: |
| Assisting. | Assisting. |
| GARRETT LOW. | MANUEL VALDEZ FLORES. |

December 22nd, 1832, petition of Chambers, as attorney of Alexander de la Garza, to the Alcalde of the village of Austin, stating the fact of a concession by the Supreme Government, dated at Leona Vicario, the 15th day of February, 1831, in sale, to his constituent, " of five sitios of land, as appears by the concession which also accompanies ;" designating and denoun-cing three sitios on the waters of the San Andres, and two sitios more commencing the survey on the eastern margin of the Brazos river, above and adjoining the road from Nacogdo-ches to San Antonio de Bexar, and on the upper corner of the sitio conceded by the Government to William Mathis, &c. ; prayer for an appointment of surveyor and to be put in pos-session.

Then followed :  By being presented and admitted, inasmuch as the law permits, with the documents referred to, I put the petitioner in the possession of the land he has selected, being  vacant, and the Empresarios giving their permission, within whose contract they are found ; and for this purpose I give them a copy of this, that they may give such permission. Thus I, Luke Lesassier, only Alcalde of the village of San Felipe of Austin, decree and sign with assisting witnesses.

L. LESASSIER.

FRANCIS ADAMS, Assisting.          IRA R. LEWIS, Assisting.

Then followed the permission  of Sterling C. Robertson, as principal member of the Nashville Company, and agent of Hosea H. League, Empresario, dated May 27th, 1834.

Then followed :   Third Seal.   For  the  Term of 1834 and 1835.   Two bits.

Not being able to secure paper of the corresponding seal at the time of issuing the following title, I have caused the seal to be attached afterwards, that thus the laws on public rents may be complied with.   San Felipe  de  Austin, on 6th day of November, 1834.

I. R. LEWIS.

*Citizen Commissioner I. R. Lewis :*

The citizen licentiate, Thomas Jefferson Chambers, with due respect before you, would  represent, that  the citizen, Alexander de la Garza, having obtained of the Supreme Government of the State a cession of land in class of purchaser, on the 15th of February, 1836, (1836 in the transcript and underscored.— REPS.) he appointed me his attorney on the 18th December, 1832, to receive the possession and for other purposes ; and at my request the most excellent Governor of the State, on the 28th of July, was pleased to appoint you Special Commissioner, to concede and issue to him  the  corresponding  titles, and as I have selected and denounced two sitios on the eastern margin of the river Brazos, near and above the road, which goes from Bexar to Nacogdoches, since  the  22d of December,

1832, as appears by the corresponding documents, I pray you
may be pleased to issue the corresponding titles, in which I
shall receive justice and favor.

BEXAR, 22d of September, 1834.

T. JEFFERSON CHAMBERS.

The citizen Ira R. Lewis, commissioned by the Supreme Gov-
ernment of the free State of Coahuila and Texas, by decree
of 22nd July, 1834, to put the licentiate Thomas Jefferson
Chambers, attorney of Alexander de la Garza, in possession of
the eleven sitios of land, which he has purchased of the Su-
preme Government, by corcession of the 15th of February,
1832, at the request of the party interested, I have determined
to put him in possession of the land, which he has selected in
the foregoing petition, on the eastern margin of the Brazos
river, near and above the road, which goes from Nacogdoches
to Bexar ; and the land being vacant, I have caused it to be
scientifically surveyed in the form and under the following
lines, commencing the survey at a landmark of the upper cor-
ner of the sitio conceded to William Mathis, &c., (here follows
a description of the metes and bounds of the land and the lines
of the survey,) comprehending an area of 50,000,000 of square
varas, or, that which is the same, two sitios of land, pertain-
ing to the temporal class in the quantity of six labors, and in
the remainder to the pasture class.

Wherefore, using the powers which have been conceded to
me by the law, and in compliance of the aforesaid decree of
the Supreme Government, in the name of the State of Coahu-
ila and Texas, I have put, and put the licentiate citizen
Thomas Jefferson Chambers, attorney of the citizen Alexander
de la Garza, in the possession real and true, of the said land,
under the limits and lines and according to the aforesaid sur-
veys, and I concede it to him and confer it forever. Let a
certified copy of the present instrument be taken and other
documents relative to this land, that being delivered to the
party interested, may serve him as a title in form, and that,

possessing the land in right of property, he may enjoy it as he may think proper to enjoy, to barter, alienate, use and dispose of it at his will, he, his heirs, successors, or who of him or of them may have cause or right.

Given in the village of San Felipe of Austin, on the 20th day of the month of October, 1834.

I. R. LEWIS.

MANUEL M. VALDES, Assisting.

WILLIAM L. CAZNEAU, Assisting.

Then followed another similar petition (without further authentication of paper) from Chambers to Lewis, dated also Bexar, September 22d, 1834, to be put into possession, &c., of "a tract of land on the western margin of the Trinity river, "about one hundred and thirty-five miles above the road which "goes from Bexar to Nacogdoches, and thirty-five miles above "the confluence of two large creeks, which run into said river "on the western side, all of which appears by the correspond-"ing documents," &c.

Then followed, without further authentication of paper :

The citizen, Ira R. Lewis, commissioned by the government of the free State of Coahuila and Texas, by decree of 28th of July, 1834, to put the licentiate Thomas Jefferson Chambers, attorney of Alexander de la Garza, in possession of the eleven sitios of land, which he has purchased of the same Supreme Government, by concession of 15th of February, 1852.

At the request of the party interested, I have determined to put him in possession of the land, which he has designated in the foregoing petition, on the western margin of the Trinity river, about one hundred and thirty-five miles above the road, which goes from Bexar to Nacogdoches and thirty-five miles above the confluence of the two large creeks which run into the same river on the western side, and the land being vacant, I have caused it to be scientifically surveyed in the form, and under the lines following, &c. (here follows a description of the metes and bounds, courses and distances, &c.) compre-

hending an area of 75,000,000 of square varas, or that which is the same, three sitios of land, pertaining to the temporal class in the quantity of *the* (so in the transcript) labors, and in the remainder to the pasture class.

Wherefore using the powers, which have been conferred on me by the law, and in compliance with the aforesaid decree of the Supreme Government, in the name of the free State of Coahuila and Texas, I have put the said citizen licentiate Thomas Jefferson Chambers, attorney of the citizen Alexander de la Garza, in the possession real and true of the said land, under the limits and lines, and according to the surveys aforesaid, and I concede it to him and confer it forever. Let a certified copy be taken of the present instrument, and other documents relative to this land, that delivering them to the party interested may serve him as a title in form, and possessing the land in right of property, he may enjoy it as he may think proper, to enjoy it, barter, alienate and dispose of it at will, he, his heirs and successors, or who of him or of them may have cause of right.

Given in the village of San Felipe of Austin on the 22d day of the month of October, 1834.

                                        I. R. LEWIS.

MANUEL M. VALDES, Assisting.

There was no question as to the commission of Lewis, the special commissioner who extended the title ; there was an authenticated copy of his commission in the record, but it did not appear to have been offered in evidence.

The Judge instructed the jury, without request, as follows :

In this case the plaintiff is to recover, if at all, on the strength of her own title, and not on the weakness of the title of the defendants. The proof must therefore satisfy you that she has the suprrior title to the land she claims, to enable you to return a verdict for her. If the defendants or either of them have a title superior to the title of the plaintiff, you should find for the defendants. A survey, without a patent, is

a sufficient title to enable the plaintiff to recover, if the defendants do not show a superior title. The power of attorney from la Garza to Chambers, with a title to the land mentioned in the power, (some words omitted here in making the transcript.—REPS.) and unless you find from other evidence before you, that la Garza has made another conveyance than this to Chambers, then Chambers has never been the owner of the land in controversy, and consequently the conveyances from Chambers to Davidson, and from Davidson to Fulton, were nullities and conferred no title on either of them ; and so far as their titles are concerned, they would be no bar, under such circumstances, to plaintiff's right to recover. If you believe from the evidence before you, that la Garza, in making Chambers his agent and attorney, and Chambers in accepting and carrying out said power, both had for their object to confer upon Chambers indirectly, the title in his own right to the land claimed by the defendants ; or that la Garza was a mere passive instrument in the hands of Chambers to enable him to obtain this land in his own right ; that would show that they were perpetrating a fraud upon the Government, and it would be no bar to the right of the plaintiff to recover. To determine this fact you may enquire whether la Garza has ever had any other connection with this land, since he executed the power to Chambers, to act in his stead, and whether from the terms of the power, it was the intention of la Garza to confer upon Chambers the entire beneficial interest in the lands described in it. If the concession, made by Viesca, the Governor, to la Garza, is for five leagues of land, and the grant from Commissioner Lewis to Chambers, as attorney for la Garza, is for eleven leagues of land, and there appears in evidence no other concession than the one for five leagues, and this variance between the concession and the grant has not been accounted for and explained by the evidence, it is a circumstance which will authorize you to presume fraud in the grantee, and collusion and combination with the officers, who

issued such a title upon such a concession, and would invest the defendants with no title, which would bar plaintiff's right to recover.

The defendants asked the Judge to instruct the jury as follows:

1st. That the concession to Alexander de la Garza was by the legal authorities of the existing Government; and it being an absolute grant, having no precedent conditions, the land was, by the concession, withdrawn from the public domain, and was not subject to location at the time of plaintiff's entry; and that her entry and survey are absolutely void.

2d. That even if there had been conditions subsequent, running with the defendant's concession, no one but the Government can take advantage of any want of fulfilment on his part; and that the plaintiff cannot recover.

3d. That a general charge of fraud amounts to nothing, but in order to maintain the charge of fraud, there must be specific acts of fraud charged and proved; there are no specific acts of fraud charged in plaintiff's petition, and therefore she cannot recover, no matter what the proofs may be.

4th. That no matter what acts of fraud Chambers may have committed since the concessions to de la Garza, it cannot avail to defeat the concession.

5th. That the survey is merged in the grant, and that it is not sufficient to show that the lines cannot now be found, but the plaintiff must prove that no survey was made or adopted by the Commissioner in the grant.

6th. That the plaintiff having shown by her own averments, that the land is located in the county of Brazos, beginning at Mathis' corner on the Brazos river, if the jury believe that said corner can be found it is sufficient. (Signed by defendants' counsel.)

The first, second, third and fourth of the foregoing charges are refused, as asked. The fifth and sixth are refused, and the following given in their stead: That the survey is merged in

the grant, and after the grant is made, if the beginning corner is established by proof, and the corners and distances of the lines are given, this is a sufficient identification of the land to sustain the grant. (Signed by the Judge.)

Verdict and judgment for plaintiff, &c.

*White, Carter*, and *Hancock West*, for appellants.

*J. Taylor*, for appellee.

WHEELER, J. There is but one ground of objection to the title of the defendant in this case, which is not so fully answered by the repeated decisions of this Court upon similar titles, as not to require further notice ; that is the misdescription in the power of attorney under which the final title was obtained, of the quantity of land embraced in the concession. It is spoken of in the power, as a concession of eleven, instead of what it appears on its face to be, a concession of five sitios of land. But this evidently is a mere clerical mistake as to one of the descriptive circumstances mentioned in referring to the concession, which itself accompanied the power ; and it is corrected by other matter of description given, so as perfectly to identify the concession, and place it beyond the possibility of mistake or cavil, what particular concession or grant was intended. It is described by its date, the authority by which, and where made, the name and residence of the grantee, and is fully and accurately described in every other particular, except that it is called a concession of eleven, instead of five sitios of land. It is evident from the face of the title, that this is a mere clerical mistake ; and it is so fully corrected by other matter of description in the power of attorney where it occurs, as to create no ambiguity, if the concession and the power were now to be regarded as separate and distinct instruments or evidences of title. But they are not to be now so regarded. The concession accompanied the power, was

passed upon by the proper authorities, the Alcalde and Commissioner, and incorporated into the final title, of which it is a constituent part; so that there can be no possible mistake, or doubt, nor can it be made a question, as to what concession it really was, upon which the title issued. That is *res adjudicata*, evidenced by the title itself. There is, therefore, nothing in this objection to the title. Instead of being an evidence of fraud, as the Court below supposed, it is rather the reverse. For Courts have often remarked, what common observation teaches, that where parties intend the perpetration of a fraud, they are apt to attend with the greatest nicety to all the minute circumstances necessary to clothe their transaction in a perfect garb; while men, conscious of the rectitude of their intentions, are less attentive to the minor circumstances of mere form.

The verdict was doubtless returned under the influence of the doubt thrown upon the validity of the title, by the charge of the Court on the subject of fraud. But the charge was wholly unwarranted by any evidence whatever, of any fraud practiced, or attempted to be practiced in obtaining the grant, concession, or title. The rule that fraud is not to be presumed but must be proved is especially applicable to such a case. The effect of the charge, was to cause the jury to deduce the conclusion of fraud from the face of the title; from the fact that the grantee sold after obtaining the concession. But repeated decisions of this Court have settled, beyond question, that those who acquired land by purchase under the 24th Article of the Law of Colonization of the 24th of March, 1825, under which this grant was made, were at liberty to sell as soon as the grant was obtained. They did not come within any inhibition upon the power of alienation, contained in the laws of colonization; and their right to sell "at any time" is expressly recognized in the 27th Article of the same law, with only the qualification therein imposed. (11 Tex. R. 391; 14 Tex. R. 191.) The sale by the grantee was the exercise of a

Fulton v. Duncan.

legal right, and did not afford any evidence of fraud in obtaining the grant. The charge assumes that Garza was but a nominal grantee; that the real grantee was Chambers, and that he had not the legal capacity to take under the law. But there is not the slightest foundation afforded by the grant, itself, or by any other evidence, to warrant either supposition. The contrary, it would seem, was the fact, if we might refer to the evidence afforded by other cases upon which this Court has adjudicated. (Ruis v. Chambers, 15 Tex. R. 586.) Besides, whether the person to whom the grant was issued, possessed the requisite legal qualifications, is a question which was passed upon and determined by competent authority at the time; and can not now be enquired into. (Styles v. Gray, 10 Tex. R. 503; 14 Id. 189; Ruis v. Chambers, 15 Tex. R. 586.)

But it is sufficient for the disposition of this case, that the charge of the Court, upon the subject of fraud, was not warranted by the evidence; was manifestly erroneous. The other objections to the title, urged in argument by the appellee, require no other answer than a reference to the decisions of this Court, where they have been fully considered and disposed of. (7 Tex. R. 384; 10 Id. 461; 11 Id. 391; 9 Id. 167; 14 Id. 165; Clay's Heirs v. Holbert, Id. 189; Ruis v. Chambers 15 Tex. R. 586.) Upon the authority of these decisions, the title of the defendants must be held to be a good valid, title. Consequently the charge of the Court was erroneous, and the verdict of the jury contrary to law and the evidence; for which the judgment must be reversed and the cause remanded for a new trial.

Reversed and remanded.