JOSE A. MANCHACA ET AL. v. C. P. FIELD ET AL.

(Case No. 5182.)

62  135
91  524
91  525

1. COLONIZATION LAW — SALE.— The right of the purchaser of lands under article 24 of the colonization law of March 24, 1825, to sell his concession, or to alienate the land previous to the expiration of six years from the date of the concession, was contemplated by article 27 of the laws and decrees of Coahuila and Texas.  Citing *Fulton v. Duncan*, 18 Tex., 37.

2. COMMUNITY PROPERTY.— A concession issued under the twenty-fourth article of the colonization laws of March 18, 1831, being the subject of sale, was property, in which the wife of the party to whom it issued had a community interest, which on her death descended to her heirs, and attached to the grant subsequently extended in the name of the husband.  Citing *Porter v.*

Chronister, 58 Tex., 54; Wilkinson v. Wilkinson, 20 Tex., 244; and Yates v. Houston, 3 Tex., 452.

3. Concession — Sale. — A power of attorney which conferred on the attorney the right to take possession of land to which the principal was entitled by virtue of a concession issued under the colonization laws of 1831, and to hold and alienate the same as his own property, the principal undertaking to abide by and ratify the acts of his agent, done under the authority thus conferred, though in form a power of attorney, was in legal effect a sale of the concession, and of the right to the land that might be acquired under it.

4. Land — Superior title — Same. — Such an instrument, executed during the life of the wife of the principal to whom the concession issued, conveyed the superior title to the attorney and his vendees to the land afterwards granted in the name of the maker of the instrument, and no interest descended to the heirs of the wife, who died before the final title was extended.

5. Presumption of deed. — See opinion for facts from which the sale of land, in the absence of direct evidence of a conveyance, was presumed.

6. Presumption. — Since the surviving husband was authorized to sell the community property for the payment of community debts, under the laws of Mexico, if, after the death of the wife, the surviving husband sold such property, a presumption of good faith on the part of the husband, and of the existence of community debts authorizing the sale, will be indulged against the heirs, who after a lapse of forty years assert rights to the property so sold.

Appeal from McLennan. Tried below before the Hon. B. W. Rimes.

The case is sufficiently stated in the opinion.

*Wm. H. Hamman* and *Francis M. Adams*, for appellants, on the proposition that the concession was community property and the subject of sale, cited: L. O. and Tex., vol. 1, pp. 60, 61, § 1; 1 Cp., 5, also p. 115, § 2; Yates v. Houston, 3 Tex., 452; Jones v. Jones, 15 Tex., 147; Stramler v. Coe, 15 Tex., 215; Allen v. Harper, 19 Tex., 502; Wilkinson v. Wilkinson, 20 Tex., 244; Porter v. Chronister, 58 Tex., 54, 55; Land L. Cal., O. and Tex., vol. 1, pp. 60–63; McMullen v. Hodge, 5 Tex., 72; Ryan v. Jackson, 11 Tex., 399, 402; Portis v. Hill, 14 Tex., 70, 71; Martin v. Parker, 26 Tex., 260; Johnson v. Harrison, 48 Tex., 257; Hodge v. Donald, 55 Tex., 349; Veramendi v. Hutchins, 56 Tex., 414; Hanrick v. Barton, 16 Wall., 170.

On the proposition that one having a legal right and in constructive possession is not required within any time to take active steps against opposing claims, they cited: Johnson v. Harrison, 48 Tex., 268; McKin v. Williams, 48 Tex., 89–92; Williams v. Conger, 49 Tex., 583, 602.

That the power of attorney did not convey the property, they cited: Ryan v. Jackson, 11 Tex., 391; Martin v. Parker, 26 Tex.,

260; Rogers v. Kennard, 54 Tex., 35; Watrous v. McKie, 54 Tex., 71; 2 Story's Equity, § 1531; 1 Addison on Con., §§ 220, 221; Judson v. Sierra, 22 Tex., 371.

*Hefley & Wallace, A. S. Lathrop* and *Anderson, Flint & Anderson,* for appellees, on their proposition that the wife of Jose David Sanches never had a community interest in the land, cited: Colonization Laws, 1825, arts. 24–28; Laws of Coahuila and Texas, 19, 20; Webb v. Webb, 15 Tex., 274; Caudle *et als.* v. Welden, 32 Tex., 355.

That the power of attorney conveyed to Penida, they cited: Martin v. Parker, 26 Tex., 253; Fulton v. Duncan, 18 Tex., 34; Ryan v. Jackson, 11 Tex., 391; Clay v. Holbert, 14 Tex., 196.

On the instruction to the effect that the jury might presume a conveyance from Thorn to Punchard, they cited; Sanger v. Moody, 60 Tex., 96.

BASSETT, SPECIAL JUDGE.— This suit was brought on the 22d of December, 1881, by the appellants Manchaca and others as plaintiffs, to recover of the appellees Field and others an undivided half of four leagues of land, part of a ten-league survey granted by the government of Coahuila and Texas to Jose David Sanches. The cause was tried by a jury and resulted in a verdict and judgment for the defendants, from which the plaintiffs appeal.

The plaintiffs are the descendants and heirs of Maria Dorotéa Sanches, deceased, who was the wife of the grantee, Jose David Sanches. On the 16th of March, 1831, Sanches applied to the governor of Coahuila and Texas for a concession of eleven leagues of land under the twenty-fourth article of the colonization law of March 24, 1825. The concession was issued March 18, 1831. The final title to ten leagues, of which the four leagues in controversy are a part, was extended in the name of Jose David Sanches on the 3d of October, 1833. Mrs. Sanches died in April, 1832, between the date of the concession and that of the grant, and the plaintiffs claim through her a community interest in the premises.

The defendants contest the right of plaintiffs to recover on the ground: 1. That Mrs. Sanches had no such right under the concession as would entitle her heirs to claim an interest in the land which was selected and granted under it after her death.

2. That whatever interest she may have had in the concession was divested by the instrument called a power of attorney, executed during her life-time by her husband to one Jose Penida. And

3. That if Mrs. Sanches and her heirs had any interest in the

land it was divested by a sale made in 1839, for the payment of community debts, by Sanches to Wm. Punchard, under whom the defendants deraign title.

It is obvious that if either of the foregoing propositions be sustained the judgment for the defendants must be affirmed. Without undertaking to follow in detail the numerous propositions under which counsel have presented the case, it will be sufficient for us to indicate our views on the questions stated.

I. Did Mrs. Sanches have such a community interest in the concession granted during the marriage of herself and husband as would entitle her heirs to claim the land selected and granted to the husband after her death?

The facts pertinent to this inquiry are as follows: On the 16th of March, 1831, Jose David Sanches, being a married man, the husband of Maria Dorotéa Sanches, made application to the governor of Coahuila and Texas for the purchase of eleven leagues of government land under the twenty-fourth article of the colonization law of March 24, 1825. This law (Laws and Decrees of Coahuila & Texas, p. 19; P. D., 586) authorized the sale to Mexicans, and to them only, of such lands as they might wish to purchase, provided that not more than eleven leagues should be united in the same hands and subject to forfeiture should the purchaser fail to cultivate the land within six years. The lands selected were to be classified, when surveyed, whether as pasture lands, tillage lands not irrigable, or irrigable tillage lands, the price varying, according to classification, from $100 to $280 per league.

The right of the purchaser under this article to sell his concession or to alienate the land previous to the expiration of the six years, the subsequent purchaser assuming the performance of the conditions as to payment and cultivation, seems to have been contemplated by article 27 (Laws and Decrees C. & T., p. 20; P. D., 589), and has been recognized by this court in Fulton v. Duncan, 18 Tex., 37.

The law of 1825 contains no express direction as to the time of payment by purchasers, and this court has held, in Hancock v. McKinney, 7 Tex., 440, that it was discretionary with the executive whether the sale should be for cash or on time. In practice the sales were generally made on credit, and the sale in this instance appears to have been so made.

It is urged by the defendants that although the concession had issued in the life-time of Mrs. Sanches, no step had been taken to appropriate any land under it; that before the grant could be made effectual by the issuance of the final title, it was necessary to obtain

the consent of the empresario to locate the concession within his colony; that the particular land must have been selected, and surveyed and classified by an authorized surveyor, and the survey and classification approved by the commissioner, and that the fees of the empresario and other colonial officials, and the amount due the government for the land according to its classification, must have been paid or secured; and that the mere concession, which was nothing more than a license to purchase so many leagues of the public domain, to be subsequently selected, and at a price and on terms to be subsequently determined, ought not to be treated as property in being at the death of Mrs. Sanches so as to entitle her heirs to claim a community interest in the land afterwards granted under it.

There is much force in the argument, and it finds an apparent sanction in Webb v. Webb, 15 Tex., 274; Walters v. Jewett, 28 Tex., 192, and perhaps other decisions of this court; but the later decisions and the weight of authority seem to favor the proposition of appellants, that the concession having a money value, and being the subject of sale, was property, in which Mrs. Sanches had a community interest which descended to her heirs at her death, and which attached to the grant subsequently extended in the name of her husband. Porter v. Chronister, 58 Tex., 54; Wilkinson v. Wilkinson, 20 Tex., 244; Yates v. Houston, 3 Tex., 452.

II. Assuming then that Mrs. Sanches had a community interest which would attach to the land when subsequently granted, and of which her heirs could avail themselves, it becomes necessary to consider the effect upon her rights and those of her heirs of the instrument called a power of attorney executed by her husband during their coverture.

On the 22d of November, 1831, Sanches, whose wife was then living, executed to one Jose Penida an instrument which empowered Penida, as his attorney, to take possession of ten of the eleven leagues to which he was entitled under his concession, and to hold and alienate the same as his own property, Sanches undertaking to abide by and ratify the acts of Penida done under the authority so conferred.

On the 9th of July, 1832, after the death of Mrs. Sanches, Penida indorsed this instrument to one Frost Thorn, to whom he grants and conveys all the powers conferred on him by the instrument, designating it as a power of attorney. On the same day, Penida executed to Thorn a bond reciting the payment of $50,000, and binding himself under a penalty in a like amount to convey to him said ten leagues so soon as he, Penida, should have complied with

his obligations to the government and obtained possession of the land.

The final title was extended on the 3d of October, 1833. It is issued in the name of Jose David Sanches, and recites that the grant is made on the application of his attorney, Frost Thorn, who is put in possession of the land.

Under repeated decisions of this court construing similar instruments, it must be held that the instrument executed by Sanches to Penida, though in form a power of attorney, was in effect a sale of the concession and of the right to the land which might be acquired under it, and that the superior title was thereby diverted out of Sanches and his wife so as to leave no interest to be inherited by her heirs at her death. Martin v. Parker, 26 Tex., 253; Ryan v. Jackson, 11 Tex., 391; Fulton v. Duncan, 18 Tex., 34; Clay v. Holbert, 14 Tex., 196. By the indorsement of the instrument by Penida to Frost Thorn and the contract to convey to him, the superior title to the concession and to the land when granted was vested in Thorn.

There was no error in the charge of the court authorizing the jury, in their discretion, to presume a sale of the land from Frost Thorn to Wm. Punchard (Taylor v. Watkins, 26 Tex., 699; Veramendi v. Hutchins, 48 Tex., 552), and the evidence sustains the finding of the jury presuming such a sale.

It appears that on the 14th of December, 1832, Sanches, by his attorney Frost Thorn, obtained the consent of the empresarios Austin & Williams to locate ten leagues under his concession within the limits of their colony. On the same day the same empresarios issued an order to the principal surveyor, F. W. Johnson, to survey ten leagues of land for Wm. Punchard, as the agent of Sanches. These dates are taken from the original orders which were introduced in evidence. A different date is given in the papers accompanying the final title, but the argument is not affected thereby. On the 6th of August, 1833, Punchard paid to the empresarios $500 for their said permission. In August and October, 1833, he paid Johnson $280 for surveying the land, and Lessassier, the commissioner, $150 for issuing the title and putting him in possession of the land, and Williams $15.56¼ for stamped paper, and for writing the deed from the commissioner. In 1838 and 1839, he paid to the authorized agents of the state the government dues on the land, amounting to $1,080.

On the 29th of May, 1839, Sanches executed to Punchard a deed to the ten leagues, referring to the accompanying duly authenticated copy of the deed from the commissioner, and reciting that the title and possession had been delivered to his attorney, Frost Thorn.

Thorn was a witness to this deed, which was duly acknowledged on the day of its date, and was within a few days afterwards recorded in the several counties in which the land lay. The taxes were paid by the administrators of Punchard and others claiming under him in 1854 and since. In 1855 the administrators brought a number of suits against trespassers, which were compromised about 1856 on the parties agreeing to recognize the title of Punchard. The defendants claiming under Punchard took possession about 1866, and have been in possession ever since. Frost Thorn died about 1855. It does not appear that either he or his heirs have ever set up any claim to the land. As against them, so far as appears, the defendants could claim title by limitation.

The plaintiff's suit was instituted after the lapse of more than forty years from the date of the deed to Punchard, twenty-five years after the institution of suits and the exercise of other acts of ownership under it, and after fifteen years of open and notorious possession by the defendants, claiming under the Punchard title.

In this connection it is to be remembered that the Spanish civil law, which was in force prior to 1839, recognized verbal as well as written grants to land. Herndon v. Casiano, 7 Tex., 335.

From these facts, taken in connection with the great lapse of time, the inference is not only reasonable, but is well-nigh irresistible, that the deed from Sanches to Punchard was executed with the consent of Thorn. Veramendi v. Hutchins, 48 Tex., 552, 553; Gullett v. O'Connor, 54 Tex., 409; Dailey v. Starr, 26 Tex., 562; Kemper v. Victoria, 3 Tex., 159; Mitchel v. United States, 9 Pet., 760; Jackson v. Lunn, 3 Johns. Cas., 114–117.

It appears also from the testimony of the witness F. W. Johnson, to which no objection was apparently taken, that the witness had recently seen and examined a number of papers relating to the Punchard title, and among others an authenticated copy of the grant and title by Frost Thorn, agent and attorney in fact of Jose David Sanches, to Punchard; and assuming, as we must, the correctness of the transcript, the presumption of a deed from Thorn to Punchard, otherwise sufficiently authorized, is greatly strengthened. It is unnecessary, therefore, for us to determine whether or not the defendants could have availed themselves of the title of Thorn as an outstanding title without connecting themselves with it.

III. We should have no hesitation in affirming the judgment on this ground alone. But in any event, the same conclusion would follow from the verdict of the jury, finding for the defendant on the further ground that there were community debts of Sanches

and wife which were a charge on the land, and which authorized the surviving husband to make the sale to Punchard.

In his petition for the concession Sanches expressly undertook to pay to the state the price to be fixed on the land under the provisions of the law. The concession is conditioned on such payment, and the final title requires him to satisfy the state in the sum of $1,080, the price of the land according to its classification. We have already seen that these and other expenses necessarily incurred in procuring title to the land were paid by Punchard, and if the concession to Sanches, made during the life-time of his wife, is to be treated as vesting in her a community interest in the property, it would be inconsistent to hold that his liability and undertaking to pay the government dues and other necessary expenses in procuring the grant were not community debts constituting a charge on the wife's interest in the property.

The suggestion that Punchard was a mere volunteer in making the payment of the government dues and other expenses is negatived by the fact that his agency is recognized in the order of the empresarios to the surveyor to make the survey, and by the testimony of Johnson that the survey was made for Punchard.

The presumption arising after so great a lapse of time and the facts stated sufficiently support the finding that there were community debts which authorized Sanches, as survivor, to sell the land. Veramendi v. Hutchins, 48 Tex., 552; S. C., 56 Tex., 420; Sanger Bros. v. Moody, 2 Tex. Law Rev., 148.

The survivor being thus authorized to sell for the payment of community debts, a *prima facie* presumption of good faith ought to attend the exercise of the power. Such sales will be sustained, notwithstanding a very considerable disproportion between the value of the property sold and the amount of the debts, unless, indeed, the disproportion is so great as to evince an abuse of discretion and to authorize an inference of fraud on the rights of the heirs. Wenar v. Stenzel, 48 Tex., 490. We see no reason for such an inference here.

The several rulings of the court below in the giving and refusing of charges, and in the admission of evidence, are in substantial accord with the views of this court.

We find no reversible error in the record, and the judgment will be affirmed.　　　　　　　　　　　　　　　　　　　Affirmed.

[Opinion delivered June 20, 1884.]

Chief Justice Willie and Associate Justice West did not sit in this case. Hon. B. H. Bassett and T. S. Maxey, Esq., sat in their stead under appointment.