NEW YORK AND TEXAS LAND COMPANY, LIMITED,
v. W. T. HYLAND ET AL.

No. 897.

1. **Parties in Partition Suit.**—One tenant in common sold a part of the land by metes and bounds.   The other tenants in common, in suit for partition against the first vendor, could ratify the sale, and having done so, the vendees having no interest in the land are not necessary parties.

2. **Bona Fide Purchaser in Part from Heirs.**—In all the cases which we have examined, in which the rights of an innocent purchaser from a part of heirs holding title were discussed, the doctrine is recognized, that if such a purchaser can in any event assert an innocent purchase from a part of the heirs to the exclusion of other heirs, he ought to show not only that he was ignorant of the existence of other heirs, but that he had also made inquiry or exercised diligence to ascertain if other heirs existed.

3. **Same.**—It is to be doubted if in any case a purchaser from a part of the heirs entitled to the estate will be protected as an innocent purchaser against other heirs who are not guilty of some act of estoppel, or want of care calculated to mislead a purchaser, although the utmost diligence has been exercised by the purchaser in ascertaining who are all of the heirs.

4. **Heirs—Equities.**—As heirship is not susceptible of registration, the statutes relating to recorded instruments do not apply to the rights of heirs.   The principles of equity, good faith, and fair dealing must support the rights of a party seeking relief against such rights.

5. **Bona Fide Purchase—Inquiry.**—Walter Campbell was a married man.   A land certificate was issued to him.   He died, leaving a widow, two sons, and a daughter. His widow married again and had children by such marriage.   The two sons died unmarried, leaving as heirs the mother, sister, and the children of second marriage. These children of second marriage sued parties holding from a vendee of the certificate before its location from the mother and sister, who claimed to be the heirs of the two sons.   It was alleged in the plea of innocent purchase, that inquiry was made as to "who were the heirs," and mainly of the grantors (the widow and daughter). *Held,* that the inquiry did not show good faith.   (1) The inquiry as to *heirs* was matter of law, and (2) the inquiry of the grantor by the purchaser as to title does not show diligence consistent with fairness.   (3) The co-owners can not be bound or their

rights affected by such declarations (of other co-owners). (4) Inquiry should have been directed to the fact whether the deceased left other brothers or sisters.

6. **Purchase from One of Several Heirs.**—Our investigation has not discovered a case the decision of which protected a purchaser from an heir (who simply held by inheritance) who had no notice of the claims of other heirs who held by the same title. Ross v. Morrow, 85 Texas, 173.

7. **Purchase of Chattels—Land Certificates.**—The rule is elementary, that a purchaser of personal property can acquire no better title than his vendor owned; and that equity will not afford protection to an otherwise innocent purchaser, unless in a case in which there exists some element of estoppel that would operate against the owner.

8. **Cotenants—Laches—Ouster.**—It can make no difference whether tenants in common hold by legal or equitable title, as no laches can be charged to them, nor will they be affected by limitation or stale demand when asserted by a cotenant, unless the facts show an adverse holding or repudiation of the rights of the cotenant to that extent that amounts in law to an ouster. A conveyance by a tenant in common without adverse possession taken by the purchaser, or the mere assertion of the entire title by the vendee by virtue of the conveyance without knowledge of that fact being brought to the notice of the cotenants, will not amount to an ouster.

9. **Trespass to Try Title—Stale Demand.**—In actions for the recovery of land, we do not think, under the present statutes bearing on the questions of trespass to try title and limitations, that stale demand has any application.

10. **Trespass to Try Title.**—The action of trespass to try title is statutory in form and is essentially a legal action, although under our blended system the right to the land in controversy may rest alone upon a title purely equitable; and in the adjudication of the equitable title the same character of judgment for the land may be and is by virtue of the statute rendered in favor of the party recovering as if the action was based upon a legal title.

11. **Statute of Limitations.**—The present statute of limitations seems to be complete within itself in prescribing periods of time in which actions may be barred, and this without reference to whether such actions are legal or equitable. The statute should be applied to both characters of action.

12. **Same—Equitable Title.**—The statute of limitations operates a defense in actions for recovery of land in trespass to try title, whether the title asserted by the plaintiff be legal or equitable. This being the case, stale demand can not apply.

13. **Findings of Fact—Bill of Exceptions.**—A judgment of a court, when dependent upon facts that the trial court finds to exist, ought not to be overturned because the trial court may have committed error in admitting evidence as shown by bill of exceptions, when it is not made to appear (no statement of facts being in the record) that such finding and the judgment that followed were not based upon other evidence.

APPEAL from Travis. Tried below before Hon. T. B. COCHRAN.

*R. G. West*, for appellant.—1. In a suit for partition, all parties in anywise interested in the lands sought to be partitioned are necessary and indispensable parties; and it appearing from appellees' petition that the State Penitentiary Board had the legal title to 903 acres of the land sought to be partitioned, the members of that board were necessary parties to this suit. Holloway v. McIlhenny Co., 77 Texas, 659; Peterson v. Fowler, 73 Texas, 524; McKinney v. Moore, 73 Texas, 471; Johns v. Northcutt, 49 Texas, 455; Ship Channel Co. v. Bruly, 45 Texas, 6; Franks v. Hancock, 1 Posey, 567; 17 Am. and Eng. Encyc. of Law, 717.

2. Appellant's plea of innocent purchaser should not have been stricken out, because said plea shows that appellant and those under whom it claims had in good faith and for full consideration purchased the Walter Campbell land certificate from the widow and surviving daughter of Walter Campbell only after making diligent inquiry as to who in fact were the heirs of Walter Campbell, and after having been informed that the heirs of Walter Campbell were his wife, two sons, and a daughter, and that the two sons had died intestate and unmarried. Hall v. Gwynne, 23 S. W. Rep., 289; Sanburn v. Schuler, 22 S. W. Rep., 119; Hill v. Moore, 19 S. W. Rep., 167; Kirby v. Moody, 84 Texas, 202; Pouncey v. May, 76 Texas, 565; Edwards v. Brown, 68 Texas, 337; 2 Pom. Eq. Jur., sec. 607; Johnson v. Newman, 43 Texas, 628.

3. By virtue of the patents being issued to the heirs of Walter Campbell for the Cherokee County land, and to Walter Campbell for the Coryell County land, these appellees, under no circumstances being the heirs of Walter Campbell, at most only had an equitable title in the lands sought to be partitioned, and hence their demand was stale at the time this action was instituted.

The proposition is elementary, but see also following recent Texas cases: Browning v. Pumphery, 81 Texas, 163; Wilson v. Simpson, 80 Texas, 279; Howard v. Stubblefield, 79 Texas, 1; Robertson v. Du Bose, 76 Texas, 10; Chamberlin v. Boon, 74 Texas, 663; 83 Texas, 481.

The patent vested the legal title in the heirs of Walter Campbell, and not in the heirs of John W. and Charles T. Campbell: Reed v. West, 47 Texas, 240; Kircher v. Murray, 54 Fed. Rep., 626; Lindsay v. Freeman, 83 Texas, 267.

*R. C. Walker*, for appellees.—1. Where one cotenant sells by metes and bounds a portion of a survey, the other cotenants can ratify the sale and treat the same as a partial partition, and in a suit for partition of the remaining portion of the survey, they can charge the cotenant who sold with their interests in the part sold, and recover for those interests out of the unsold part. Arnold v. Cauble, 49 Texas, 533; Camoron v. Thurmond, 56 Texas, 22; Gilliam v. Null, 58 Texas, 298; Freem. on Coten. and Part., secs. 199–206.

2. Where one cotenant has sold by metes and bounds a part of a survey, and the other cotenants sue for partition of the unsold part of that survey, and in such suit seek to ratify the sale and to charge him in that partition with their interests in the part sold, the purchasers of the part sold are not necessary or proper parties to the suit. Glasscock v. Hughes, 55 Texas, 461; Battle v. John, 49 Texas, 202; John v. Battle, 58 Texas, 591, 598; Richardson v. Loupe, 80 Cal., 490.

3. A purchaser who buys property from the heirs of a party who is dead, is bound at his peril to know who the heirs are, and he can not buy from a part of the heirs and be an innocent purchaser as to the other heirs who do not join in the sale. Ross v. Morrow, 85 Texas,

172; Randolph v. Junker, 21 S. W. Rep., 551; Hill v. Moore, 85 Texas, 335; Mitchell v. Marr, 26 Texas, 329; Trammell v. Neal, 1 Posey, 51, 56.

4. Title by inheritance is a legal title, and where a patent issues to a person who is dead, the legal title ipso facto vests in his heirs, and if any of the parties who were heirs at the time descent was cast are dead, the legal title vests in their heirs. Rev. Stats., art. 3961; Acts 1851, 4th Leg., p. 21; Brooks v. Evetts, 33 Texas, 742; 2 Sayles' Real Estate Law, sec. 772; Bouv. Law Dic., title "Heir;" Coke's Littleton, secs. 7b, 9a.

5. The holder of an equitable title can not avail himself of the defense of stale demand against another equitable title, unless he has been in actual possession of the land, or unless he can connect himself with the legal title. Runge v. Schleicher, 21 S. W. Rep., 424; Edwards v. Gill, 23 S. W. Rep., 742; Wilson v. Simpson, 80 Texas, 279; Reed v. West, 47 Texas, 248; Buswell on Lim., sec. 19.

FISHER, CHIEF JUSTICE.—Appellees, W. T. Hyland and others, brought this suit for partition and trespass to try title, claiming that on the 26th day of May, 1888, they had an interest of 25-216 in the Walter Campbell survey, in Coryell County, and likewise that on that day they were entitled to a like interest in the Walter Campbell survey in Cherokee County, and averring that appellant was the owner of the remaining interest in said land. The petition of appellees further averred, that on May 26, 1888, the appellant had sold to Galen Crow, Walter Tips, and C. C. Dibrell, Commissioners of the Penitentiary Board of the State of Texas, 903 acres out of the Cherokee County survey, and that the remaining portion of that survey was worth only one-half as much as the 903 acres sold, and that appellees desired to assent to and ratify said sale and recover from appellant their pro rata interests in the whole of said survey out of the unsold portion thereof, to wit, 3-11 of said unsold 1761 acres. Prayer is also made for judgment for the title and possession of the lands, for writ of restitution and possession, and for partition, etc.

Appellant answered by: (1) General demurrer. (2) Special exceptions: (a) that from appellees' petition it was impossible to determine whether the action was in suit for partition or trespass to try title; (b) that as a suit for partition, all the parties interested, to wit, Galen Crow and others, Commissioners of the State Penitentiary, and their successors in office, were necessary and proper parties to the suit; (c) that in this action appellees could not confirm the alleged sale of the Cherokee County land, and ask judgment over against appellant for their pro rata portion out of the unsold part of the Cherokee land; (d) as a suit for compensation for the land alleged to have been sold by appellant, the same was barred by statutes of limitation of two and four years. (3) General denial. (4) Plea of not guilty. (5) Plea of limitation so far as compensation is sought to be recovered. (6) Bona

fide purchaser for value and without notice of appellees' claim.  (7) Stale demand.

Appellees filed exception to the pleas of innocent purchaser and stale demand.

Appellant's general demurrer and special exceptions were overruled, and appellees' exceptions to appellant's pleas of stale demand and innocent purchaser were sustained and these pleas stricken out, and on November 23, 1892, a final decree was rendered, giving appellees judgment for the interest claimed by them in the lands, and charging appellant with that portion of the land averred to have been sold by it to the penitentiary board, and appointing commissioners to appraise the unsold portion of the Cherokee County land and make partition of both tracts.

*Findings of Fact.*—The court below found the following as the facts in the case, which are adopted by this court as its conclusions of fact. There is no statement of facts in the record.

"1.  That on the 2nd day of April, A. D. 1839, there was issued by the Board of Land Commissioners of Robertson County, to Walter Campbell, as his headright, a certificate entitling him to have surveyed two-thirds of a league and one labor of land, or 3129 acres.

"2.  That at the time of the issuance of said certificate said Campbell was a married man, Sarah Campbell being his wife.

"3.  That said Walter Campbell died in 1841 or 1842, his said wife and their three children surviving him, the names of said children being Elizabeth, Charles T., and John W., and these constituted his sole heirs.

"4.  That the said Sarah Campbell intermarried with Joseph Hyland in 1845, and plaintiffs W. T. Hyland, J. I. Hyland, Mrs. S. C. McBride, Mrs. L. A. Chapman, Mrs. Nancy E. Shilling, and Mrs. Mary J. House are the children and only issue of the said Sarah and Joseph.

"5.  That the said Charles T. Campbell died in December; 1858, and said John W. Campbell died in September, 1862, each dying intestate, unmarried, and without issue.

"6.  That all of the said Hyland half-brothers and sisters, plaintiffs, except Mary J. House, were born before the death of the said Charles T. Campbell, and she was born before the death of the said John W. Campbell.

"7.  That on the 7th day of March, A. D. 1871, the said Sarah (Campbell) Hyland and the said Elizabeth (Campbell) Gilreath, joined by their husbands, for a valuable consideration conveyed the said Walter Campbell headright certificate (number 18), issued by the Board of Land Commissioners of Robertson County, April 2, 1839, to the Houston & Great Northern Railroad Company.

"8.  That on June 15, 1878, there was issued a patent to the heirs of Walter Campbell for 2664 acres of land in Cherokee County, Texas, under a location made upon the said certificate number 18, the field notes of which are the same set out in plaintiffs' petition.

"9. That on May 23, 1876, a certificate for the unlocated balance of said certificate number 18 was issued, and under a location made upon this certificate there was issued, on November 7, 1878, a patent in the name of Walter Campbell for 463 acres of land in Coryell County, Texas, the field notes of which are set out in plaintiffs' petition.

"10. That the said conveyance by Mrs. Hyland and her daughter, Mrs. Gilreath, was absolute in form, and purports to convey full and perfect right to the said certificate number 18, and that the defendant company is the owner of all interest passing by said conveyance, except the tract sold by it as shown in next finding.

"11. That on May 26, 1888, the defendant company, in consideration of $2259.60 paid by Walter Tips, Galen Crow, and C. C. Dibrell, as Commissioners of Penitentiaries for the State of Texas, conveyed a part of the said Cherokee County tract, amounting to 903 acres, to said commissioners and their successors in office, for the use of the State of Texas, the field notes of which tract are set out in plaintiffs' petition, which said conveyance is absolute in form, and undertakes to convey said tract with limited warranty against all claims arising by, through, or under it."

*Opinion.*—Appellant's first assignment of error complains of the ruling of the court in not sustaining its demurrer to the appellees' petition, on the ground that Galen Crow, Walter Tips, and C. C. Dibrell were necessary parties to the suit.

The petition in effect declared that appellant, as a tenant in common, had sold to Crow, Tips, and Dibrell, for the benefit of the State of Texas, 903 acres of the land, which the plaintiffs and the appellant had owned in common, and which sale the plaintiffs, by their averments, expressed a willingness and intention to abide by and their express satisfaction and ratification of it, and asked that, as appellant had received the proceeds of the sales in the partition of the remaining lands between them, the appellant be charged with the land so sold.

As the matter thus stood the purchasers from appellant were not necessary parties. If the land they had purchased was sought to be brought into the partition they would have been necessary parties, but no relief was asked against them, and plaintiffs were content to permit their title acquired from appellant to remain undisturbed. The sale made by appellant was binding on it, and as to its vendee it had nothing to litigate, and so long as the appellees did not complain or seek to affect or disturb the rights acquired by such vendees in the land that they had purchased from appellant, by specific and definite description and boundaries, the appellant would not be heard to complain. The vendees of appellant under such circumstances were not necessary parties. Arnold v. Cauble, 49 Texas, 532; Cameron v. Thurmond, 56 Texas, 30; Battle v. John, 49 Texas, 210; Freem. on Coten. and Part., secs. 194–213.

The appellant pleaded in its answer an innocent purchase of the certificate and the land thereby located. Demurrers were sustained to this plea, which ruling is assigned as error. The question presented as the result of this ruling is, did the facts stated in the answer show a case entitling the appellant to relief as an innocent purchaser?

A brief analysis of the averments of the answer shows these facts:

1. That the certificate by virtue of which the land was located was owned by Walter Campbell, about April 2, 1839, and that it was the community property of himself and wife, Sarah, and that he died in 1843, leaving surviving him his wife, Sarah, and three children, Elizabeth, Charles T., and John W. Campbell, and that Charles T. Campbell died in 1858, and John W. Campbell died in 1862—both intestate and unmarried.

2. Mrs. Sarah Campbell—after the death of her husband, Walter—in 1845 married Joseph Hyland, and that the appellees in this case, W. T. Hyland, J. I. Hyland, Sarah C. Hyland (now Sarah C. McBride), Lavinia Hyland (now Lavinia Chapman), Mary Hyland (now Mary House), and Nancy Hyland (now Nancy Shilling), were the children of said marriage, and all of whom were born prior to the death of John Campbell, and all prior to the death of Charles Campbell, except Mary House, and that these children were entitled to inherit in part the interests of their half-brothers, Charles and John Campbell, deceased.

3. That on the 7th day of November, 1871, Sarah Hyland, the surviving wife of Walter Campbell, joined by her husband, Joseph Hyland, with Elizabeth Campbell (now Elizabeth Gilreath), the only surviving child of Walter Campbell—with her husband—for a valuable consideration conveyed the certificate in question to the Houston & Great Northern Railway Company, the same then being in the possession of the said Gilreaths and Hylands, and who delivered the same to said railway company, and that said railway company, after said purchase, located said certificate and paid the costs and expenses of said location; and that the appellant holds by mesne conveyances under and from said railway company, and that it and those under whom it holds have continuously paid the taxes on said land, and have continuously exercised control, ownership, and possession thereof, and selling a part of said land; and that the land situated in Cherokee County located by virtue of said certificate was patented in 1875 to the heirs of Walter Campbell, and that situated in Coryell County located by virtue of said certificate was patented in 1878 to Walter Campbell, and that the appellant purchased the lands after they were patented "in ignorance of appellees' claim or title, which up to that time had never been asserted."

4. And that, prior to the sale and delivery of said land certificate to said railway company, the said railway company, acting by and through its duly authorized agent, made inquiry as to who in fact was entitled to said land certificate as the heirs of Walter Campbell, and

after diligent investigation, said company became convinced that said Sarah Campbell Hyland and the said Elizabeth Campbell Gilreath were the sole and only parties entitled to said land certificate; and the said railway company was further induced to purchase said land by reason of the representations made at and before the said purchase by the said Hylands and the said Gilreaths, to the effect that the said Sarah Hyland and said Elizabeth Gilreath were the sole heirs at law of the said Walter Campbell, and that no other person was in any way interested or owned or claimed title in and to said Walter Campbell land certificate; that said railway company gave full value for said certificate, and was not aware at the time of its purchase as aforesaid that said Sarah Hyland had any children by her second marriage, or that these plaintiffs were in anywise interested in said land certificate; and in this connection defendant says, that neither the said Hylands nor the said Gilreaths disclosed the existence of these plaintiffs, and that it was relying on the fact, that by the conveyance of said Gilreaths and said Hylands all the title to said certificate would be vested in said railway company, that it purchased said land certificate; that during all the time said certificate and the land claimed thereunder was in possession of said railway company, under whom by regular mesne conveyance this defendant claims, and down to a few months prior to this suit, neither the railway company nor any of its vendees nor this defendant was aware that these plaintiffs claimed any interest in the lands in controversy located by said certificate.

The foregoing is in substance the facts stated in the answer.

It will be observed from these facts, that the appellant admits that the appellees are the heirs at law of Charles and John Campbell, their half-brothers, and are entitled by inheritance to a part of their estate —which includes a part of the land sued for—which they in turn inherited from their deceased father, Walter Campbell; and it will be further observed, that the right of appellant as an innocent purchaser, if admitted, must rest upon the equities connected with the purchase of their vendor, the railway company, and can not depend upon the facts relied upon to show the innocent purchase and good faith of the appellant at the time it purchased, because the averment of the answer in this connection, while it shows that the appellant purchased in ignorance of the rights of appellees, does not show that appellant made any inquiries or used any diligence to ascertain whether there were in existence any other heirs or claimants of the derivative estate of Walter Campbell other than Mrs. Hyland and Elizabeth Gilreath. The answer in this respect does not aver that the appellant used any efforts or exercised any diligence to ascertain if Mrs. Hyland had children by her second marriage.

In all of the cases which we have examined in which the rights of an innocent purchaser from a part of those holding titles were discussed, the doctrine is recognized, that if such a purchaser can in any event assert an innocent purchase from a part of the heirs to the exclusion

of other heirs, he ought to show not only that he was ignorant of the existence of other heirs, but that he had also made inquiry or exercised diligence to ascertain if other heirs existed. Ross v. Morrow, 85 Texas, 174; Hill v. Moore, 85 Texas, 336, and other cases.

Thus it is seen, that if the defense of innocent purchaser is to prevail it must grow out of the facts connected with the purchase by the railway company, appellant's vendor. Of course, if the railway company was such an innocent purchaser as a court of equity would protect, such right would result to appellant as its vendee, although appellant may have known of the rights of appellees at the time it acquired title. The answer, in asserting the right acquired through the railway company, states that it purchased the certificate for a valuable consideration, without any notice of the existence of children of Mrs. Hyland by her marriage with Hyland, and also states some facts that tend to show that it used and exercised reasonable diligence to ascertain if other heirs existed. It will be noticed, that it is not averred that the railway company did not know that Charles and John Campbell were the children of Walter Campbell and Mrs. Hyland, and that they were dead, but the want of notice or knowledge of the existence of these appellees as the children of Mrs. Hyland is the fact relied upon as a basis for the innocent purchase.

It is to be doubted if in any case a purchaser from a part of the heirs entitled to the estate will be protected as an innocent purchaser against the claims of other heirs who are not guilty of some act of estoppel or want of care calculated to mislead a purchaser, although the utmost diligence has been exercised by the purchaser in ascertaining who are all of the heirs. There may be cases which, by reason of their peculiar facts, may fall within exceptions to this rule, but the facts averred in the answer do not bring this case within that category.

The rights acquired by inheritance are not susceptible of registration, and our statutes that relate to recorded instruments and the consequent notice that results from such records can not in the nature of things apply to such a claim. Consequently, if the right of an innocent purchaser may exist, it must rest upon the broad principles of equity, independent of such statutes (Hill v. Moore, 62 Texas, 612); and in such cases, in determining such rights, good faith and fair dealing are the bases upon which the equities of the party seeking relief must rest, and, as between those whose rights may be equal, a court of equity will extend relief to him who is less at fault.

The appellees were not able, nor was any means of so doing provided or required by law in which they could have placed their title or right—heirship—of record; nor is it averred or stated in the answer that the appellees, as heirs entitled to a part of the estate of their half-brothers, knew or had any notice of facts looking towards a purchase of the certificate by the railway company, or that they did anything to conceal their right or to mislead a purchaser from the other heirs.. In fact, there is no element of estoppel charged against them,

nor are they charged with any act tending towards bad faith or negligence or a want of care.   Upon the other hand, the appellant seeks protection by reason of the fact that its vendor, the railway company, made inquiries of the heirs from whom it purchased, and presumably, from the averments, from others, as to the existence of other heirs who may be interested in the estate of Walter Campbell.   It made this inquiry in the main from its vendors, the ex-wife of Walter Campbell and his surviving daughter, and it seems that the information obtained from this source was the principal fact upon which the railway company relied in purchasing the certificate.   They, it seems from the averments, falsely told the representative of the railway company that no other heirs existed.   This state of facts may well invoke an application of the principle "that he who trusts most should suffer the most," for a purchaser who relies upon the representation of his vendor that he is the sole heir of the intestate whose estate he seeks to sell, places more confidence in such representations than the business relations of the parties would seem to warrant.   One desires to sell and the other purchase, and, viewed from a rational and business standpoint, it seems that a purchaser who seeks to exercise proper caution and diligence should, as to the existence of the title resting in the one from whom he would purchase, seek information as to that fact from other sources than the representations of the seller.   And when it is shown that in his pursuit of inquiry and information the principal fact relied upon to show diligence is the representations of the seller that he is the sole heir, in such a case he falls short of that degree of fairness and good faith that equity exacts as the measure of his conduct before it will extend to him its relief.

What principle is it that allows the statements and representations of a vendor to affect the rights of his co-owners when they are not parties to such statements and have no knowledge of them, and, it may be asked, what equity has a vendee against the rights of such co-owners who relies upon the statements of his vendor prejudicial to their interest?  Both law and equity furnish but one answer to these questions: such co-owners can not be so bound or rights so affected.

The averments of the plea present another aspect that it is important to consider.   It avers, that the railway company did not know of the existence of these appellees, and did not know that Mrs. Hyland had children by her second marriage; and that it used diligence to ascertain if other heirs existed; and the principal fact stated as showing diligence was the inquiry made of Mrs. Hyland and Mrs. Gilreath, who represented and stated that they were the only heirs.   Now, it does not appear from the averments of the answer that any inquiry was made of Mrs. Hyland and Mrs. Gilreath as to the existence of other children of Mrs. Hyland; but it seems that the appellant was content to rely upon the statement that no other heirs existed.   The existence of a child or children and the relationship they may bear to another is a question of fact, and is a matter about which a witness

who has knowledge of such matters may testify, but the question of heirship, or who are heirs, is in the main a question of law, about which a witness may not be permitted to testify. The statement of Mrs. Hyland and Mrs. Gilreath, that they were the only heirs, was simply their conclusion that involved a mixed question of law and fact, and was a statement so doubtful, from the very fact that it was nothing more than the conclusion of the party making the statement, that a person of ordinary prudence would not be justified in relying upon it, but ought to further inquire into the facts upon which that conclusion is based. Nothing of the kind appears here, except the general statement that inquiries were made. It is doubtless true that if the railway company—which knew as a fact that one of the heirs from whom it was purchasing (Mrs. Hyland) had married since her first husband's death—had pointedly inquired of her if she had any children by this last marriage, she would have so stated. If they had been informed that these appellees were her children, the law would charge the railway company with knowledge of the fact that they, as the heirs of their deceased half-brothers, would be entitled to an interest in the very estate of such half-brothers that the answer avers was purchased from Mrs. Hyland and Mrs. Gilreath. Inquiries made as to the existence of heirs and information given that such a person is or is not an heir, is very different from inquiries made as to the existence of relationship, or whether the intestate left those of a degree of kin who may under the law inherit. The former embraces simply the elements of a conclusion, and the latter concerns facts. If I should ask A if he was the sole heir of his ancestor, and he should answer "Yes," this question and answer would involve a conclusion, and would not be the statement of a fact; but if I should ask A if his father left other children, this would be inquiry about a fact, and one that A could answer as a fact. The matter thus stated suggests the inquiry, what right has a purchaser to protection in equity as an innocent purchaser who makes inquiries calling for the opinion or conclusion of the party to whom they are addressed, and who purchases by reason of an answer or statement that does not state facts, but simply the opinion or conclusion of the person making the statement, when it is not shown that an inquiry as to the fact itself was not made, or, if made, was not answered in a way so as to make the answer the statement of a fact, but the answer given was simply the opinion or conclusion of the one making it? A purchaser thus situated has not exercised that diligence that equity exacts of him, nor will such a representation or statement serve as a basis upon which to rest an innocent purchase without notice.

Hill v. Moore, 62 Texas, 610; Wren v. Peel, 64 Texas, 380; Edwards v. Brown, 68 Texas, 331; Pouncey v. May, 76 Texas, 565; Patty v. Middleton, 82 Texas, 587; Hensley v. Lewis, 82 Texas, 596; Hall v. Gwynne, 23 Southwestern Reporter, 289, and kindred cases in which purchasers for value without notice have been protected against the

claims of heirs whose rights were unknown to the purchaser, were cases in which the purchaser acquired his title from him or those in whom the apparent title existed by virtue of some instrument creating title. Those decisions were based upon facts very materially different from those set up in the answer in this case. The purchase in this case was from heirs that stand upon the same footing with the appellees. The rights of Mrs. Hyland and Mrs. Gilreath were no more disclosed by reason of any apparent title resting in them than were the rights of these appellees. They all stood as heirs, and their rights existed by reason of facts independent of any instrument creating in either the apparent ownership of the certificate. The doctrine that underlies these cases is, that a purchaser for value of the apparent title will be protected, as he can assume that the one in whom the title is apparently lodged has the right to convey, and if he is otherwise innocent, fair dealing will require his protection by a court of equity. But our investigation has not discovered a case in which the question was decided, and where a decision of the question was necessary or called for, that protected a purchaser from an heir—who simply held by inheritance—who had no notice of the claim of other heirs who held by the same title; and the case of Ross v. Morrow, 85 Texas, 173, seems to hold that such protection will not be extended.

There is another defect which, in our opinion, is fatal to the case made by this plea. At the time that the railway company purchased the certificate it was unlocated, and was therefore a mere chattel, and a sale of it was regulated by the ordinary rules of law that relate to and govern the sale of personal property. The rule is elementary, that a purchaser of personal property can acquire no better title than his vendor owned, and that equity will not afford protection to an otherwise innocent purchaser unless in a case in which there exists some element of estoppel that would operate against the owner. Dodd v. Arnold, 28 Texas, 101; Stone v. Brown, 54 Texas, 330; Dodge v. Litter, 73 Texas, 320. The last case cited is, according to our construction, in point. In cases like Hill v. Moore, 62 Texas, 610, and similar cases where the title to personal property is apparently vested in the seller, and in cases where the real owner by some act or conduct of his vests the possession and right to personal property apparently in the seller, a purchaser for value from such apparent owner, without notice of the right of the true owner, will be protected. But nothing of the kind is shown by the averments of the answer in this case. There was nothing disclosed by the face of the certificate that gave the vendors of the railway company any greater right than existed in favor of these appellees; nor did that instrument disclose any apparent title in the sellers to the railway company; nor do the facts stated in any way connect these appellees with that sale, or state any circumstances from which it is possible for an estoppel to spring.

In our opinion, no error was committed in sustaining the demurrer.

The appellant, in its fifth subdivision of its answer, pleaded stale demand to the title asserted by appellees; to which a demurrer was addressed, and it was sustained by the trial court. This ruling is assigned as error.

This plea seems to be complete in itself, and was evidently intended by the pleader to embrace all the facts showing that the issue presented by this plea was a good defense. Therefore the plea, in determining its sufficiency, should be tested by the facts therein stated, without aid or reference to other issues that are set up in other parts of appellant's answer.

This plea does not state that the appellant is in possession of the land, and that it has asserted any exclusive and adverse possession or right thereto, nor does it state any facts that the law would deem sufficient to show an ouster of their cotenants, the appellee. The plea states facts showing that these appellees are owners in common with appellant as a part of the heirs of Walter Campbell through the title acquired by inheritance from their half-brothers, Charles and John W. Campbell, the two deceased sons of Walter Campbell, and concludes, because that as their title may be equitable, that their demand is stale.

In disposing of this question, we do not concern ourselves with the character of title held by either appellees or appellant, as our disposition of this question is not based upon the character of title held by either party, but rests upon the fact that the answer fails to show a case in which stale demand is well pleaded, and upon the further fact, that stale demand as a defense in a suit of this character will not be permitted. It can make no difference whether tenants in common hold by legal or equitable title, as no laches can be charged to them, nor will they be affected by limitation or stale demand when asserted by a cotenant, unless the facts show an adverse holding or repudiation or denial of the rights of the cotenant to that extent that amounts in law to ouster. Moseley v. Withie, 26 Texas, 728; Golson v. Fielder, 2 Texas Civ. App., 400; Phillipson v. Flynn, 83 Texas, 583; Alexander v. Kennedy, 19 Texas, 496; Moody v. Butler, 63 Texas, 210; Freem. on Conten. and Part., 2 ed., secs. 222, 226–229, 241.

A conveyance by a tenant in common of the entire estate, without adverse possession taken by the purchaser, or the mere assertion of the entire title by the vendee of such tenant by virtue of the conveyance, without knowledge of that fact being brought to the notice of the cotenants, will not amount to an ouster. Freem. on Conten. and Part., secs. 221–243. The appellant, a purchaser from a part of the heirs entitled to the inheritance, occupies to the other heirs the relation of tenant in common. Peterson v. Fowler, 73 Texas, 526.

The appellees' action was in part in the nature of trespass to try title, in which they sought a recovery of a part of the land upon a title then existing in their favor. 73 Texas, 526. In an action of this character we do not think, under the present statutes bearing on the question of actions of trespass to try title and limitations, that stale demand has

any place in such actions.   Martin v. Parker, 26 Texas, 259; Storer v. Lane, 1 Texas Civ. App., 257; Lumber Co. v. Pinckard, 4 Texas Civ. App., 681; Duren v. Railway, 86 Texas, 291.

Under our system of laws and procedure relating to the action of trespass to try title, it has been steadily held, from the inception of the statute permitting and regulating the remedy, that the action of trespass to try title may be maintained upon an equitable as well as a legal title.   Neill v. Keese, 5 Texas, 24; Easterling v. Blythe, 7 Texas, 212; Miller v. Alexander, 8 Texas, 41; same case, 13 Texas, 497; Wright v. Thompson, 14 Texas, 559; Martin v. Parker, 26 Texas, 259; Walker v. Howard, 34 Texas, 508; Titus v. Johnson, 50 Texas, 237; Burdett v. Haley, 51 Texas, 543; Thurber v. Connors, 57 Texas, 96; Hill v. Moore, 62 Texas, 612; Shepard v. Cummings, 44 Texas, 502; Peterson v. Fowler, 73 Texas, 525; The State v. Snyder, 66 Texas, 694; Grimes v. Hobson, 46 Texas, 419; Hardy v. Beaty, 84 Texas, 568.

It is said in State v. Snyder, 66 Texas, 694, that the petition, in addition to asserting title and seeking adjudication thereof and possession, may set up such facts as are necessary to such relief as could be given only by a court of equity, without in the least depriving the action of its character to try title to land.

The action in Peterson v. Fowler, 73 Texas, 526, was one in which tenants in common sued their cotenants for partition, stating that they were entitled to an undivided half-interest in the land and their cotenants to the other half, and further averred, that their cotenants had conveyed two-thirds of the lands, when they were only entitled to convey one-half.   The court held that the action was one of partition, and that as to the extent of the difference between one-half and two-thirds, it was trespass to try title.

The action of trespass to try title is statutory in form and is essentially a legal action, although, under our blended system of jurisdiction, the right to the land in controversy may rest alone upon a title purely equitable, and in the adjudication of the equitable title the same character of judgment for the land may be and is by virtue of the statute rendered in favor of the party recovering as if the action was based upon a legal title.   Thus it is seen that the action of trespass to try title, although upon whatever character of title it may be based, as well as the remedy in the nature and character of judgment to be rendered, is essentially legal.   If an equitable right may be asserted in an action at law as the basis for a recovery, and a judgment at law be rendered thereon, it seems that the very principle upon which rests the defense of stale demand could have no place or application in a system of procedure that permits this to be done.   If an equitable title is as potent and effective as a legal one upon which the action of trespass to try title may be based, why should stale demand defeat it when the right asserted is through an action at law, and not in equity?   Stale demand, when sought to be interposed as a defense, can be asserted only when the opposing right is equitable, and when

the action or controversy is of an equitable character. And in cases in which equitable rights to property are asserted that are not controlled by actions at law, such as is regulated or prescribed by the statute of trespass to try title or other similar statutes that authorize the institution of suits at law, the defense of stale demand may be interposed, unless the policy of our statutes of limitations is to cut off the defense, and by reason of such statutes to regulate and prescribe solely the time in which persons asserting rights to property may be barred in their right to recover.

The present statute of limitations seems to be complete within itself in prescribing periods of time in which actions may be barred, and this without reference to whether such actions are legal or equitable; and, under the broad and comprehensive reach of the statute, it is believed that the bar prescribed by the statutes in fixing the time in which different actions may be brought embraces equitable as well as legal actions, and should be applied in their operation to both characters of actions. Sayles' Civ. Stats., arts. 3191–3199, 3209, 3212. These articles prescribe the time in which actions may be brought for the recovery of land and for the possession, and for the specific performance of contracts to convey real estate, and articles 3200, 3201, and 3215 to 3226 declare under what circumstances limitation will not run, and the class of persons that are relieved from the operation of the statutes. Articles 3202 to 3214 prescribe the time in which personal actions may be instituted. Article 3207 declares, that every action other than for the recovery of real estate for which no limitation is otherwise prescribed shall be brought within four years next after the right to bring the same shall have accrued, and not afterwards. The articles of the law relating to when actions affecting real estate shall be barred—when it is recollected that these provisions of the law and the bar they create may be pleaded and interposed in defense to an equitable as well as a legal title—seem to provide for and cover all conceivable cases in which the lapse of time could be interposed as a defense. And, keeping in view what we conceive to have been the general policy of the law-making power in this State in framing and passing these statutes, to make and provide a time certain in which actions may be brought, and to not leave that matter in the doubt and uncertainty that would necessarily in the nature of things exist if equitable titles were to be lost if the owner was guilty of laches in asserting his right (because the laches or stale demand would depend upon the facts of the particular case), we think that article 3207 is important to be considered in showing the purpose of the law to prescribe a time in which all actions should be brought; for laches and stale demand as a defense can be interposed in actions in personam as well as where the title to real estate is involved. 12 Am. and Eng. Encyc. of Law, 533–609. This article, it will be seen, when taken in connection with the other articles relating to when personal actions may be instituted, prescribes a time in which all actions of a personal nature may be brought. It was as important to

have a definite time fixed in which actions affecting title to real estate should be instituted as it was in personal actions. And it can not be assumed, with reason, that the Legislature, in passing these statutes, intended to leave uncertain the time in which actions in some way affecting real estate may be instituted, when all doubt as to their intention as relates to personal actions is made manifest by the article quoted. The same reasons why the Legislature should fix a time certain for all personal actions existed in favor of their fixing a time certain for the bringing of all real actions. And by reason of the broad and comprehensive provisions of the law relating to the time in which actions affecting title to real estate may be brought, and the exceptions of the statutes in favor of those classes that limitation will not affect, the assumption is rational that the Legislature evidently understood and so considered that those provisions of the law were so broad and sweeping, and so effectually covered and provided for all classes of actions affecting real estate, that a provision of the law with reference to these matters, such as that provided by article 3207, concerning personal actions, was unnecessary.

If the doctrine is admitted—which is the case in this State—that the periods of limitation prescribed by law will apply to and affect equitable remedies as well as those that are legal (Smith v. Fly, 24 Texas, 346), and our statutes of limitations provide a period of time that may be interposed as a bar to recovery in all cases in which the title to real estate may be litigated, then, under the authority of Chamberlin v. Boon, 74 Texas, 663; Riley v. McNamara, 83 Texas, 13, and Storer v. Lane, 1 Texas Civil Appeals, 257, the statute will govern, and stale demand can not be interposed. The rule laid down in these cases is to the effect, that if the law prescribes a period of limitation in which an action may be brought, the statute will govern, and stale demand can not be pleaded.

By analogy the following authorities are to the same effect: Bank v. Daniel, 12 Pet., 32; Coulson v. Walton, 9 Pet., 62; Miller v. McIntyre, 6 Pet., 61; White v. Sheldon, 4 Nev., 280; Pilcher v. Flinn, 30 Ind., 202; Godden v. Kimmell, 99 U. S., 201; Wilson v. Simpson, 80 Texas, 280; Hill v. Moore, 85 Texas, 335; 1 Wood on Lim., 2 ed., pp. 132–148. The two Texas cases just cited hold that married women are not affected by stale demand.

In further dealing with this question, it may be important to observe that the statutes of limitations prescribe the element of actual possession that must exist in order for limitation to prevail, and according to one line of decisions this element may not be essential in asserting a stale demand, provided the facts may show an open assertion of right adverse to the equitable title. Another line of decisions may hold, that even in defenses of this character possession must be shown. If the first line of cases be conceded to be correct, the fact that possession need not in all cases be shown in order to assert stale demand may be said to be one important fact to be considered why this

defense is not covered and embraced in the statutes of limitations. But, without determining whether possession is or is not essential in order for the defense of stale demand to prevail, and without inquiry into the features that distinguish stale demand from limitation, it must be admitted that stale demand is a period of time furnished by equity in which equitable rights may be asserted. Now, if it be true that the statutes of limitation furnish a period of time in which actions affecting real estate may be brought and the time prescribed by such statutes may be interposed as a defense to equitable actions, why should not such statutes be held to afford the exclusive remedy in such cases, and if available as a defense against an equity, why should it not be resorted to in whatever condition the equity may exist? If the statute permits an equity to be defeated by limitation only when the conditions exist that are prescribed by the statute, why should equity under our system have a different rule, and permit the same equity to be defeated in the absence of such conditions?

The reasoning employed on this line is clearly justified by the principle announced in Chamberlin v. Boon, Riley v. McNamara, Storer v. Lane, and other cases supra.

Specific performance—the character of action the courts had before them in some of the cases cited—is clearly an equitable action as known to the practice of the chancery courts, and one to which in a court of chancery stale demand could be pleaded. But inasmuch as the statutes of limitation of this State have prescribed a limit of time in which such actions may be brought, and in view of the doctrine that exists with us that statutes of limitation may affect equitable actions, the court there held that the defense provided by the statute was exclusive, and that stale demand could not be pleaded.

In order to apply the analogy of these decisions and kindred cases to the case we have before us, it is well to set out some of the provisions of the statute of limitations that relate to real actions:

"Article 3191. Every suit to be instituted to recover real estate, as against any person in peaceable and adverse possession thereof under title or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterward.

"Article 3192. By the term 'title,' as used in the preceding article, is meant a regular chain of transfer from or under the sovereignty of the soil; and by 'color of title' is meant a consecutive claim of such transfer down to such person in possession, without being regular, as if one or more of the memorials or muniments be not registered, or not duly registered, or be only in writing, or such like defect as may not extend to or include the want of intrinsic fairness and honesty; or when the party in possession shall hold the same by a certificate of headright, land warrant, or land scrip, with a chain of transfer down to him in possession.

"Article 3193. Every suit to be instituted to recover real estate as against any person having peaceable and adverse possession thereof,

cultivating, using, or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued, and not afterwards; provided, that this article shall not apply to any one in possession of land, who in the absence of this statute (article) would deraign title through a forged deed; provided further, that no one claiming under a forged deed, or deed executed under a forged power of attorney, shall be allowed the benefits of this article.

"Article 3194. Any person who has the right of action for the recovery of any lands, tenements, or hereditaments against another having peaceable and adverse possession thereof, cultivating, using, or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward.

"Article 3195. The peaceable and adverse possession contemplated in the preceding article, as against the person having right of action, shall be construed to embrace not more than one hundred and sixty acres, including the improvements or the number of acres actually inclosed, should the same exceed one hundred and sixty acres; but when such possession is taken and held under some written memorandum of title, other than a deed, which fixes the boundaries of the possessor's claim and is duly registered, such peaceable possession shall be construed to be co-extensive with the boundaries specified in such instrument.

"Article 3196. Whenever in any case the action of a person for the recovery of real estate is barred by any of the provisions of this chapter, the person having such peaceable and adverse possession shall be held to have full title, precluding all claims.

"Article 3209. Any action for the specific performance of a contract for the conveyance of real estate shall be commenced within ten years next after the cause of action shall have accrued, and not afterward.

"Article 3220. The laws of limitation of this State shall not be made available to any person in any suit in any of the courts of this State, unless it be specially set forth as a defense in his answer."

When we consider these provisions of the statutes of limitation and give them the interpretation which they are clearly entitled to, the conclusion is inevitable, as before said, that the statutes were intended to permit the defense of limitation to be interposed in all cases in which the title to real estate may be involved, such statutes prescribing different periods in which different titles may prevail under the statute. These statutes permit the defense of limitation to be interposed in all actions of trespass to try title, as much so as if the statute had so expressly declared. And this being the case and such the action we have before us, the decisions referred to, holding that the statute prescribing a time in which actions of specific performance may be brought shall govern in such cases, to the exclusion of the equitable defense of stale demand, have peculiar force and application to the question under discussion. These decisions rest squarely upon the

doctrine that, the law having furnished a period of limitation that will bar certain actions, equity will not be looked to also for that purpose. And when we have determined that these statutes of limitation apply to and include actions of trespass to try title, they must be looked to exclusively as furnishing the time when such actions may be barred. The reasons and necessity for doing this in actions of this character exist to the same extent as the reason for the rule that requires the statute limiting the action of specific performance to be looked to and govern in that class of actions.

For the reasons stated, stale demand can not be pleaded in defense to actions of this character. Therefore, no error was committed in sustaining the demurrer.

Appellant's fourth and fifth assignments of error complain of the admission of certain evidence tending to prove the execution of the deed from defendant to Walter Tips and others, and for the reasons stated in the bill of exceptions, the evidence objected to may have been improperly admitted. But in view of the fact of the eleventh express finding by the trial court, that the deed in question was executed by the defendant, and for the further fact that there is no statement of facts in the record, we can not determine whether the ruling complained of is reversible error. Notwithstanding that this evidence was heard by the trial court, it may, from all that appears in the record to the contrary, have heard other evidence tending to establish the execution of the deed that was admissible, or that was not objected to by appellant when offered. Bupp & Robbins v. O'Connor, 1 Texas Civ. App., 330; McCarty v. Wood, 42 Texas, 38; Lockett v. Schurenberg, 60 Texas, 612. The trial court expressly finds as a fact, that the deed in question was executed by the appellant, and this fact, so expressly found, ought to stand as a fact proven by competent evidence until otherwise shown; and when in the face of such an express finding a party desires this court to revise the judgment of the lower court and set it aside, he should come with a statement of facts, or some statement of the court in its findings of fact, showing what was the evidence before it, to the end that this court may determine whether such finding was based upon the evidence objected to. If a statement of facts had been brought up with the record, it may have disclosed facts justifying the finding of the court. A judgment of a court, when dependent upon facts that the trial court expressly finds to exist, ought not to be overturned because the court that tried the case may have committed error in admitting evidence, when it is not made to appear that such express finding and the judgment that followed was not based on other evidence. Any other rule than this would rest judgments of this character upon very doubtful foundations, for the appellant who may have a bill of exceptions to evidence that was improperly admitted could always obtain a reversal by simply omitting to procure and bring up a statement of facts. The bill of exceptions does not state that the evidence objected to was all that was heard;

and even if it had, it is doubtful if such a statement would have controlled the finding of the court or could take the place of a statement of facts. Carolan v. Jefferson, 24 Texas, 230.

*Affirmed.*

Delivered November 14, 1894.