KING–COLLIE CO. v. WICHITA FALLS
WAREHOUSE CO. (No. 1341.)

(Court of Civil Appeals of Texas. Amarillo.
April 17, 1918. Rehearing Denied
Oct. 9, 1918.)

1. APPEAL AND ERROR ☞501(2)—REVIEW—
EXCEPTIONS—ORDER FOR NEW TRIAL.

For consideration on appeal of assignments
to overruling of exceptions to pleadings, exception to ruling, afterwards set up in motion
for new trial, need not be noted in the order,
in view of Rev. St. 1911, art. 2062, and district
court rule 53 (142 S. W. xxi), dispensing with
reserving of bill of exception to ruling appearing otherwise of record, and to judgment on
matters at common law constituting the record proper.

2. SEQUESTRATION ☞16—TRIAL OF RIGHT
OF PROPERTY—TENDER OF ISSUES.

Plaintiff warehouse company, tendering issue in proceedings for trial of right of property
to sequestered cotton, that it was stored with
it, need not name the owners who stored it, it
stating it could not, and this appearing on trial.

3. EVIDENCE ☞220(1) — ADMISSIONS —
AGENTS—COMMUNICATION TO OTHER PARTY.

Declarations of the agent of plaintiff, in
trial of right of property to sequestered cotton,
that there was a shortage of cotton in plaintiff's
warehouse, and that it had been delivered to
claimant, having been communicated by plaintiff's representative to defendant's representative, who admitted he had the cotton, was with
that admission admissible.

4. TRIAL ☞255(4) — INSTRUCTIONS — RE
QUESTS—LIMITING CONSIDERATION OF EVI
DENCE.

Evidence being admissible for a certain purpose, the other party, if desiring it be considered for that purpose alone, should request the
court to limit it thereto.

5. TRIAL ☞85—OBJECTIONS—EVIDENCE AD
MISSIBLE IN PART.

Objection to evidence, some of which is admissible, should segregate that which is inadmissible.

6. EVIDENCE ☞222(2) — IDENTITY — AD
MISSIONS—SEQUESTRATION.

As a circumstance identifying cotton sequestered by plaintiff warehouse company, in
action against a compress company, as cotton
embezzled from plaintiff's warehouse by M., assertion of claimant, to whom the compress company had issued receipts therefor, on refusal to
surrender it, that it had bought it of M., was
admissible on trial of right of property.

7. SEQUESTRATION ☞16—TRIAL OF RIGHT
OF PROPERTY—QUESTION FOR JURY.

Evidence on trial of right of property to cotton sequestered in action by plaintiff warehouse company against a compress company
which had issued receipts therefor to claimant,
held sufficient to go to the jury on the issue of
it being cotton which plaintiff manager had
embezzled from it, and sold after destroying the
marks thereon.

8. PRINCIPAL AND AGENT ☞148(2)—SALE
OF STORED PROPERTY—TITLE.

One purchasing cotton from the manager of
a warehouse company engaged in storing cotton and issuing receipts therefor, providing for
delivery of the cotton only on their return, gets
no title, the manager not having the receipts,
and having no authority to sell, and the warehouse company being guilty of no acts operating as an estoppel.

Appeal from District Court, Wichita County; Edgar Scurry, Judge.

Trial of right of property to sequestered
cotton between the Wichita Falls Warehouse
Company, plaintiff, and the King-Collie Company, claimant. Judgment for plaintiff, new
trial denied, and claimant appeals. Affirmed.

C. B. Felder and W. L. Bibb, both of Wichita Falls, for appellant. Martin, Bullington,
Boone & Humphrey, of Wichita Falls, for
appellee.

HUFF, C. J. This is a trial for the right
of 21 bales of cotton. The appellee, Wichita
Falls Warehouse Company, sued the Northwest Compress Company for the cotton and
sequestered the same. The appellant, King-
Collie Company, filed its affidavit and bond
for the trial of the rights of property. The
issues tendered by appellee are to the effect
that it was in the warehouse business, and
that it received the cotton in its warehouse
on storage, and as such was entitled to the
possession and had the ownership of the
cotton; that it was unable to give the names
of the owners of the cotton; and alleges,
further, that one Morris, in its employ as
manager of the warehouse, had embezzled
the cotton and sold it to appellant. The appellant tendered issues that the cotton, if it
was ever owned by or in the possession of appellee, was purchased by it in good faith,
without any knowledge of the embezzlement,
and that, by employing Morris as manager
with the right to control the cotton, was
estopped, etc. The facts show, generally, that
the appellee was in the warehouse business,
receiving cotton on storage, and that it had
employed one Morris, under a written contract, to manage the business and to receive
cotton on storage, and to execute receipts
therefor to the owner, and stipulating that the
cotton should not be delivered without a return by the owner of the cotton of the receipt to the warehouse. The facts show
that there were some 31 bales of cotton found
in the possession of the above-named compress, with the marks and numbers placed on
the cotton by the gin and warehouse obliterated or cut out, and that the tags on the cotton many of them were torn off. It is also
shown that the books kept by Morris were
mutilated by erasures and changes made
therein; that the warehouse checked up Morris, and found that there was a shortage of
about 100 bales of cotton, and they employed
an auditor to assist in checking him up and
while at work on the books, etc., Morris assisted or was present for a day or two, but
afterwards left, and, upon charges being filed
against him for embezzlement, he was arrested in Oklahoma under an assumed name. It
is an uncontroverted fact, shown by the testimony, that the 31 bales of cotton in possession of the compress, was claimed by appellant to have been purchased from Morris, the
manager of appellee. Later, however, the
evidence shows that 10 bales of this cotton,
known as the Moss cotton, appellant turned

over to appellee, asserting that it had only received these 10 bales as collateral on a debt due by Morris, the other 21 bales that appellant purchased from Morris.

[1] Assignments 1, 2, and 3 urge error in overruling appellant's special exception to appellee's tender of issues on the ground that the tender of issues did not name the owners of the cotton so deposited, and failed to set up a specific contract with the owners. The trial court overruled the special exceptions, as shown by the order of the court. The appellant, however, failed to have exceptions to the ruling of the court noted in the judgment overruling the exception, but appellant set up the action of the trial court in overruling the exception as error in its motion for new trial. The appellee here objects to the consideration of the assignments, on the ground that no exception was noted in the order to the action of the court on the exception to the issues presented. "Where the ruling or other action of the court appears otherwise of record, no bill of exceptions shall be necessary to reserve an exception thereto." Article 2062, R. C. S. "There shall be no bill of exceptions taken to the judgment of the court rendered upon those matters which at common law constitute the record proper in the case, as the citation, petition, answer, and their supplements and amendments, and motion for new trial or in arrest of judgment, and final judgment." Rule 53 (142 S. W. xxi), for district and county courts; also rule 65 (142 S. W. xxii). It has been held that a bill of exception taken on the action of the trial court on exceptions to pleadings is not authorized and will not support an assignment, and that there is no sanction in the rules or statute for taking bills of exceptions to orders entered on the minutes of exceptions. Sowers v. Yeoman, 62 Tex. Civ. App. 188, 129 S. W. 1153; Reasonover v. Riley, 150 S. W. 220; Withers v. Crenshaw, 155 S. W. 1189; Ilseng v. Carter, 158 S. W. 1163; Daniel v. Daniel, 128 S. W. 469.

It would appear from the statute and the rules, where the action of the court otherwise appears of record, no bill is required "to reserve an exception thereto." It is customary to note in the entry exceptions to the action of the court, but in so far as we can find there is no statute or rule requiring such notation as a precedent requirement to review the action of the court. It has been held repeatedly, if a demurrer to a pleading is not shown to have been presented to the trial court, it will be considered as waived or abandoned, but we know of no holding that the demurrer will be considered waived if the action of the court thereon is not excepted to in the judgment entry. His action appears of record, and can be reviewed upon proper assignment, as could any other matter apparent of record. In the case of Western Union v. Forest, 157 S. W. 204, the order overruling the exception did not show that the defendant excepted to the action of the court in so ruling. It was said in that case:

"The assignment of error and motion for new trial are sufficient to present the point. It was not necessary that appellant should have excepted or had the ruling incorporated in a bill of exceptions."

The office of a bill of exceptions is to make that a part of the record which otherwise would not be. Cunningham v. Wheatly, 21 Tex. 184. In this case the action of the court on the pleadings is part of the record according to all the definitions as well as by the rules and statutes. To require an exception to be entered would, in effect, be to require a bill of exceptions in order to bring up the action of the court as a part of the record. To hold that the failure to except to the action of the court would preclude a consideration of the demurrers would in effect be to hold the defendant abandoned in the court below its exceptions to the pleading when the record shows it was insisting on them and called for a ruling thereon, which ruling was entered of record in the manner provided by law. We therefore overrule appellee's objection to the consideration of these assignments.

[2] Ordinarily we would be inclined to hold that the appellee should have named the owners of the cotton so deposited with it, but in this case it alleged that it was unable to give the owners, and, as it developed upon the trial from the evidence that this allegation was probably true, no error is shown. The facts show that the books kept by Morris and the numbers placed on the cotton by the gin and by the warehouse and tags had been obliterated and destroyed, and that it would have been difficult to trace just who had stored the cotton with appellee. The assignment will therefore be overruled.

[3, 4] The fourth assignment asserts that there was error in permitting, over appellant's objections, the witnesses Hines, McConkey, and Warren to give certain evidence. The proposition presented under this assignment is that the declarations by Morris, the agent of appellee, in the absence of appellant, were hearsay and self-serving. The effect of the evidence of these several witnesses was that Morris admitted there was a shortage in the number of the bales of cotton in the warehouse, while they were checking him up by the warehouse receipts, tags, and books, and that he stated that appellant then held the warehouse receipts. Morris was the manager of the warehouse, who, it was charged, embezzled the cotton and sold to appellant. The evidence in the case further shows in connection with this evidence, to which objection was made, that when Morris admitted the shortage, and stated that it had been delivered by him to appellant, the witness Hines, acting for appellee, called up a Mr. Thornburn, who was then representing the appellant, and talked to him over the phone, and told him what Morris had said,

and that Thornburn then admitted he held the cotton found short, as admitted by Morris. We think this admission and the statement, as communicated to appellant, were admissible. The other declarations of Morris objected to tended to show that Morris did the numbering, or had it done, on the bales of cotton. This evidence tended to show acts done by him in furtherance of his design to dispose of the cotton in fraud of appellee's rights. We think it was admissible to show that he had in fact embezzled the cotton. The fact that his statement as to the cotton designated as purchased by appellant was included in the statement we do not think rendered the evidence inadmissible for the evident purpose for which it was offered. If appellant desired that it be not considered on the question of identity or against it, it should have requested the court to limit the evidence to the purpose for which it was admitted. This does not appear to have been done, and we therefore believe the assignment should be overruled.

[5] The fifth assignment asserts error to certain evidence given by Hines, McConkey, Smith, and Fawlkes. This assignment is so clearly multifarious that it is almost impossible to consider it. The testimony of the witnesses is entirely dissimilar, some of which was evidently admissible for some purposes. Apparently the assignment objects to certain matters testified to as conclusions drawn by comparison and deduction from the warehouse books and receipts of the compress, etc. It is asserted the books were not introduced in evidence or proven up, and that they were mutilated, etc. The propositions, some of them, are not relevant to the assignment. It is true the statement of facts is not burdened with the books, but it does show that a book was offered in evidence— just what book is not shown— and while the witnesses were testifying they referred to the book, and most of the evidence objected to relates to the manner in which Morris was checked up and found short. This appears to have been done in connection with, and in reference to, numbers on the cotton, warehouse receipts, and the like. Evidently, Morris had erased, changed, and mutilated the books. Some of the evidence was clearly admissible to show the fraudulent purpose of Morris and his method. The appellant does not segregate admissible evidence from inadmissible, and the court is not called upon to do what it should have done by its objection. The assignment, proposition, and statements are so presented in the brief that we cannot determine certainly just what the contention of appellant is. The assignment will be overruled.

[6] The sixth assignment is overruled. There were found 31 bales of cotton in possession of the compress, which had issued its certificate to appellant, 10 bales of which were known as the Moss cotton, of which appellant had the compress receipts; but it turned back this cotton to appellee, stating, first, that it had bought the cotton from Morris, but afterwards admitting that it held them only as collateral on a debt due by Morris. The other cotton so found was not turned over to appellee by appellant on demand because appellant then asserted it had purchased the 21 bales from Morris. We believe this testimony admissible as a circumstance establishing the identity. The evidence will authorize the inference that Morris embezzled the cotton, and that the Moss cotton was taken as a part of his scheme to defraud appellee, together with the 21 bales in issue.

The evidence objected to under the seventh assignment was admissible.

[7] The eighth assignment asserts error in refusing a special charge requested by appellant for an instructed verdict. The evidence in this case shows that Morris was manager for the warehouse, and while he was manager the evidence warrants the finding that he embezzled and appropriated to his own use about 100 bales of cotton which appellee held in storage; that, in order to cover up his acts, he made erasures in the books and otherwise falsified and mutilated them. Thirty-one bales of cotton were found at the compress with the gin numbers and warehouse numbers cut out and destroyed. The appellant claimed those bales of cotton so found and admitted it got them from Morris, 10 of which it claimed it received from him as collateral to a debt. These 10 bales it surrendered without a suit; the other 21 bales here in issue it claimed to have purchased and paid for and refused to surrender. It is not shown that Morris had cotton of his own. This cotton he sold in violation of the trust reposed in him by the warehouse and evidently without its consent. The receipts for the cotton issued to the several owners were not produced by appellant, but in several instances the owners testified they did not sell to appellant, but to other persons. We do not think the mere fact that the witnesses could not absolutely identify the bales found by the marks and numbers as that which had been stored with appellee should defeat a recovery when the circumstances point with almost absolute certainty that these bales were part of the cotton which had been embezzled. Certainly the appellee made a prima facie case. The appellant did not seek to deny any of the admissions charged to have been made by it or to introduce any evidence to the contrary. The court properly, we think, refused to instruct a verdict for appellant.

The ninth assignment is overruled. The court's charge is as explicit on the burden of proof as the one requested by appellant.

The tenth, eleventh, and twelfth assignments are overruled. The instructions requested as applied to this case did not present correct propositions of law, and in addition thereto they were general charges for

a verdict while this case was submitted to a jury on special issues.

The thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and eighteenth assignments are overruled. The special issues requested, in so far as correct, were submitted by the court in its general charge. The other charges were properly refused because the case was submitted on special issues. There was no error in refusing the instructions of which complaint is made in the seventeenth and eighteenth assignments, for the reasons heretofore pointed out in considering the evidence as to the Moss cotton.

The nineteenth and twentieth assignments are also overruled. The charge does not point out what particular opinion or deduction by the witnesses made from the books, etc., was sought to be withdrawn from the jury. Much, if not all, the evidence of the named witnesses was admissible. Most of the evidence relates to numbers or marks found on the cotton and from receipts returned, etc. These books were kept by Morris and the entries made by him and the markings under his direction. To establish the wrongful taking this evidence was admissible. The cotton was found in possession of appellant, who admitted that they purchased it from Morris, and it is established that the cotton marks, tags, etc., were destroyed or mutilated on the cotton in question, and that this cotton came from the warehouse, and was placed at the compress by Morris and men working under his direction. It would have been improper to give the charges requested.

[8] Assignments 21 to 27, inclusive, assert that the findings of the jury and judgment thereon are without evidence to support them. Apparently it is the contention of the appellant, because Morris was managing the warehouse, that he had the right to sell the cotton, and that he would therefore be acting within the apparent scope of his authority, which would protect appellant in the purchase of the cotton. The warehouse was receiving cotton on storage for others, giving its receipt to the owner so storing it, and we find no authority given to Morris to sell this cotton. The evidence is conclusive that Morris did sell the cotton to appellant, and, to say the least, appellant was extremely negligent in failing to get the warehouse receipts issued to the owners. Had it done so, its defense would have had foundation. It was bound to know the warehouse or Morris did not own the cotton so stored, but had only a special ownership, which entitled it to the possession of the cotton, with the imposed duty of keeping and caring for it. Ordinarily the transfer of the warehouse receipt passes the title to property stored. The evidence is sufficient that Morris sold and got the money for this cotton. Appellant bought this cotton with the outstanding warehouse receipts against it—at least appellant does not show the transfer to it of any receipt. The purchase of this cotton was out of the usual course of business. The evidence shows Morris established a system of mutilating the numbers and tags on the cotton, and that he also instructed the compress not to put the warehouse numbers on the receipt issued by the compress or on its books—a thing never done before, the custom being to place the number of the warehouse or gin on the compress books and receipts. The authority of an agent to keep and care for property does not give him the right to sell. A sale by him will pass no title. Morris was not clothed with any indicia of ownership of cotton stored in the warehouse. There is no act on the part of appellee shown by the evidence which would estop it from showing he had no such authority. The facts in this case indicate appellant must have known Morris could not sell stored cotton. It is a general rule in the sale of personal property that the purchaser cannot acquire a better title to the thing sold than the seller had. The vendee of property, of which the vendor had no title to or authority to sell, is not protected against the claim of the true owner, though he purchased in good faith and for a valuable consideration, where the owner is not guilty of acts which would operate as an estoppel. Stillman v. Hurd, 10 Tex. 109; Case v. Jennings, 17 Tex. 662; Bank v. Tufts, 63 Tex. 113; Woodward v. San Antonio Traction Co., 95 S. W. 76; McBrayer v. Smith, 145 S. W. 1053; New York, etc., v. Hyland, 8 Tex. Civ. App. 601, 28 S. W. 206. A general power to act for the principal in his business and to manage his property conveys no implied right to sell such property unless sales are regularly in the line of the business intrusted with the agent. Hodge v. Combs, 1 Black, 192, 17 L. Ed. 157; Holmes v. Tyner, 179 S. W. 887. The contract employing Morris as manager of the warehouse limited his authority to receiving cotton tendered for storage and to issue receipts therefor, which required him to stipulate that cotton would only be delivered upon the return of the receipt. Nowhere was he authorized to sell the cotton, and he could deliver the cotton at the compress only upon the order of the owner. The appellant introduced no evidence showing that it tried to ascertain the authority of the agent, but it simply paid the money to Morris, without a showing that he had the original warehouse receipts, and without showing that it even demanded the same.

The twenty-eighth assignment again asserts that the verdict and judgment are without evidence to support them, and also asserts that it was entitled to a new trial on the ground of newly discovered evidence, attaching to its motion the affidavit of Mr. Norwood to the effect that he sold to appellant five bales of cotton, the numbers of which correspond to the bales claimed by appellant,

as shown by the witness Smith. The appellant showed no diligence to secure such evidence before the trial. Norwood does not claim to have then been in possession of the warehouse receipts, and appellant, if it bought the cotton from him, evidently knew when the affidavit of claim was filed from whom it purchased the cotton, and ought to have had the receipts. The admission was made by appellant that it purchased the cotton from Morris. This admission appellant did not deny or controvert upon the trial. If it purchased the cotton from Norwood, it did not purchase it from Morris; in fact, appellant pleaded only estoppel against appellee on the ground that its agent sold the cotton, and that he had been buying cotton for himself with the permission of appellee, etc. The trial court we think properly overruled the motion for new trial. The judgment will be affirmed.

HALL, J., not sitting.